RACINE COUNTY BANK VS. LATHROP and another.

A bank discounted two drafts, drawn by L. & Co. on, and accepted by, M., V. & Co., at 30 days, the proceeds of which were used in the purchase of wheat, which was bought on joint account of the drawers and the acceptors, and was shipped to the acceptors for the purpose of meeting the drafts. The bank assigned the drafts to B., C. & Co. Before the maturity of the drafts, M., V. & Co. suspended payment, and the drafts were protested. About the same time B., C. & Co. also suspended payment, being indebted to said bank, on balance of account, in a sum exceeding the amount of both drafts. The cashier of the bank assigned to M., V. & Co. the account of the bank against B., C. & Co., to enable them to set off the same against the drafts in the hands of B., C. & Co., stipulating in the assignment (which was in writing) that the bank would do nothing to hinder M., V. & Co. from collecting the account; and as a consideration for the assignment, took the note of M., V. & Co., payable one day after date. Before the assignment was made, the cashier, with a view to enable the bank to secure its claim against B., C. & Co. by making such assignment, had requested M., V. & Co. not to pay the drafts, and on the day the assignment was made he informed L. & Co. that he had made an arrangement by which they were relieved from said drafts.

For two years after that time M., V. & Co. were in a condition to have secured L. & Co. in the amount of the drafts, and L. & Co. had extensive dealings with M., V. & Co. (who, at the time of the suit, were insolvent), which were conducted upon the understanding that said drafts were settled. The bank afterwards procured a *re-assignment* of the drafts from B., C. & Co., agreeing to give them credit for the same on the *account* above mentioned, and then sued L. & Co. upon the drafts: *Held*, that L. & Co. were discharged from their liability to the bank upon the drafts, on the ground that the assignment of the account to M., V. & Co. for the purpose of being used in payment of the drafts, and the taking of their note at one day after date therefor, was at least an extension to the acceptors of the time of payment of the debt represented by the drafts, for the days of grace to which the note was entitled, without the consent of the drawer; and on the ground that the bank is estopped from now showing, to the injury of L. & Co., that its former representations, upon which they had acted, were untrue; and that the drafts ought to be considered as having been paid with the property of M., V. & Co.

*Held*, further, that the bank was bound by the act of its cashier in making said assignment, even if he exceeded his powers in making it, it appearing that the transaction was regularly entered upon the books of the bank, so as to show the fact of the assignment and the consideration received for it, and that the books were often examined by committees appointed for that purpose, and reported correct, and their reports adopted by the board of directors, and that the note of M., V. & Co. was mentioned in the semi-annual reports made under oath to the bank comptroller, as part of the assets of the bank, and the jury, therefore, would have been warranted in finding that the assignment of the account by the cashier was *ratified* by the bank.

*Held*, also, that there was no error in excluding evidence offered by the bank, on the trial, to show a *parol* understanding between the bank and M., V. & Co., at the time of the assignment, that the account was assigned only for the purpose of being set off by them against the drafts, and that unless they should succeed in making such set-off, the assignment should be returned to the bank, and the note of M., V. & Co. delivered back to them; because, if parol evidence is admissible to vary the terms of a written agreement, even when the question arises between one of the parties to it and a stranger (as to which *quære*), the evidence, if admitted, would not have entitled the bank to a verdict.

June Term, 1860.

RACINE COUNTY BANK
v.
LATHROP et al.

APPEAL from the Circuit Court for *Racine* County.

The facts of this case are so fully stated in the opinion of the court, that it is not necessary to state them here at length. On the trial, the plaintiff offered evidence to show what was the duty of the committee whose examination of the books of the bank is referred to in the opinion of the court, and that said committee had no knowledge of the consideration of the note of Mann, Vail & Co., which appeared on the books as a part of the assets of the bank; but the circuit court excluded the evidence, and the plaintiff excepted. The plaintiff also excepted to the admission of evidence

June Term,
1860.

Racine Coun-
ty Bank
v.
Lathrop et al.

showing that on the day when the account of the bank against Bradley, Curtis & Co. was assigned to Mann, Vail & Co., the cashier of the bank told one of the firm of *Lathrop & Co.* that he had released them from $6,000 of Mann, Vail & Co.'s paper by that transaction; and also to the evidence showing that a similar statement was, at the same time, made to *Lathrop & Co.* by one of the firm of Mann, Vail & Co. The cashier of the bank procured a return of the drafts in controversy, from Bradley, Curtis & Co., on the 9th of September, 1857, giving them the following receipt: "Received of D. O. Bradley two drafts drawn by Wm. H. Lathrop & Co. on Mann, Vail & Co., of Buffalo, and endorsed by me as cashier, for which the Racine County Bank will, and does hereby, pass $6,367 71 to the credit, in account, of Bradley, Curtis & Co., as of date November 1, 1854. GEORGE C. NORTHROP, Cashier." It was admitted that there was no previous action of the board of directors of the bank specifically authorizing the cashier to obtain the drafts of Bradley, Curtis & Co. in the manner he did, and no subsequent ratification of the act further than appears in the testimony. In September and November, 1857, the cashier wrote several letters to Mann, Vail & Co., requesting them to return, cancelled, the assignment of the account against Bradley, Curtis & Co., and offering, on receipt of it, to return their note; but Mann, Vail & Co. replied that they had been notified by *Lathrop & Co.* not to return the assignment, and declined doing so. Mr. Mann testified, on the trial, that his firm had never given the cashier any authority to settle the account against Bradley, Curtis & Co., and that they had never ratified his act in so doing. It was in proof, also, that the firm of Bradley, Curtis & Co. was composed of Bradley and Curtis only. One of the firm of *Lathrop & Co.* was a director in the Racine County Bank from 1856 until the time of the trial.

On the trial, the counsel for the plaintiff requested the circuit court to instruct the jury as follows: "1. That if they believed from the evidence that George C. Northrop [cashier of the plaintiff] had no other authority to make said assignment [to Mann, Vail & Co. of the account of said bank

against Bradley, Curtis & Co.] than such as was derived from his general powers and duties as cashier of the plaintiff, then said assignment to said Mann, Vail & Co. was wholly unauthorized, and conveyed no title or interest therein to said Mann, Vail & Co. 2. That the assignment of the account, if authorized, was no payment of the drafts in question, and in no way affected them as to the plaintiff or defendants; that after such assignment, suit might have been brought against plaintiff or defendants by the holder thereof, and a plea that Mann, Vail & Co. had a set-off thereto would have been no defense, and therefore that the account, if owned by Mann, Vail & Co., did not operate to cancel the drafts or in any way affect the liability of the plaintiff or defendants thereon, until actually set off against them. 3. If the jury believe that Northrop did state to the defendants that he had relieved them from their obligation on said drafts, or did direct them not to pay said drafts while said drafts were owned by Bradley, Curtis & Co, such statements and directions were no defense to this action." The court refused to give these instructions, or any of them, and the plaintiff excepted.

The court, at the request of the counsel for the defendants, charged the jury as follows: "1. That the assignment to Mann, Vail & Co., of the plaintiff's account against Bradley, Curtis & Co., was in due form, and if the jury believe from the testimony that said assignment was executed and delivered by the plaintiff, or was afterwards ratified by it, that thereby Mann, Vail & Co. became the owners of said account. 2. That the plaintiff, having sold the account to Mann, Vail & Co., and covenanted with them to do nothing to prevent its collection, had no right, without authority from Mann, Vail & Co., to purchase the drafts by giving credit for the amount on the account, and if it did so, it could gain no rights thereby. 3. That if the jury find that Mann, Vail & Co., were the owners of the account, and that the drafts were obtained by giving credit on the account, without their authority, then that Mann, Vail & Co. are the owners of the drafts as much as they were of the account. 4. That if the drafts in fact belonged to Mann, Vail & Co., they are virtually paid drafts, so far as the drawers are concerned, and the drawers can

never be held liable again upon them to any person.   5. If the jury believe from the testimony that the plaintiff never authorized Northrop to take the drafts in the manner he did, and has never since ratified his acts, then it is not the owner of the drafts.   6. If the jury believe from the testimony that it required the assent of Mann, Vail & Co. to complete the arrangement, so that the plaintiff should become the owner of these drafts, and such assent was never obtained, then the plaintiff cannot recover.   7. If the plaintiff, by its own acts, has released Mann, Vail & Co. from all liability to it upon these drafts, then it cannot recover against these defendants. 8. That the plaintiff could not recover against Mann, Vail & Co., both on their note and then on these drafts besides, and if the jury find that the plaintiff has treated the note as still good, and in existence, and has not thus treated the drafts, then the plaintiff must be considered as having made its election, and cannot now be permitted to change.   9. If the jury believe that Mann, Vail & Co. purchased the account for the benefit of the defendants, and that Mann, Vail & Co. and the defendants thereupon acted accordingly, and the plaintiff had knowledge of these facts, then that the defendants have the right to avail themselves of the plaintiff's covenant in the assignment, that it would do nothing to prevent the collection of the account, and that such account is a perfect defense to this suit.   10. That the plaintiff cannot recover unless it is the legal owner and holder of the drafts."   To all of these instructions the plaintiff excepted.

Verdict and judgment for defendants.

*Cary & Pratt,* for appellant:

1. The assignment of the account to Mann, Vail & Co. was unauthorized and void, because there was no express authority from the board authorizing it, and because the general powers of a cashier of a bank which is governed by a board of directors, do not authorize the sale and assignment of a chose in action.   Angell & Ames on Corp., §§ 299, 301; *Halowell Bank vs. Hamlin*, 14 Mass., 178; *Hoyt vs. Thompson*, 1 Seld., 320; *Hartford Bank vs. Barry*, 17 Mass., 95; *Barrick vs. Austin*, 21 Barb. (S. C.), 241.   There

never was any ratification of the assignment by the board. The report of the committee to the board of directors, does not amount to a ratification. Nothing can be ratified by a board by inference, or by their silence, until it appears that they had knowledge of it. There is no evidence that the board had any knowledge of this assignment at the time said report was made. The plaintiff offered to show that no such knowledge was had by said committee or the board, at the time said report was made, but the proof was rejected, and for this the judgment should be reversed. *Hays vs. Stone*, 7 Hill, 128, 132; *Owings vs. Hull*, 9 Peters, 607, 629; 2 Parsons on Contracts, 46, note U. 2. In this action between the plaintiff and third persons, the real transaction between the plaintiff and Mann, Vail & Co., must govern, and if the written assignment and note do not show the real transaction, then either party is at liberty to prove the same by proof *aliunde*, and the objection that the oral testimony contradicted the written agreement, cannot be urged by either party to suppress the real facts of the case. The rule, as to contradicting written agreements, does not apply where the action is between a party to a contract and a third person. The court, therefore, erred in excluding the plaintiff's proof on this point. 1 Greenl. Ev. § 279; 2 Starkie's Ev., 575-6; 2 Pars. on Con., 68, 69; 2 Cow. & H.'s Notes, p. 1437—last of Note 961; *Strader vs. Lambeth*, 7 B. Monroe, 589; *Champlin vs. Butler*, 18 John., 169; *Reynolds vs. Magness*, 2 Iredell, 26; *Venable vs. Thompson*, 11 Ala., 147; *Krider vs. Lafferty*, 1 Wharton, 303, 314; *Noble vs. Epperley*, 6 Ind., 468; *Pyne vs. Campbell*, 36 Eng. L. & E., 91; *Woodman vs. Eastman*, 10 N. H., 359; *Simonton vs. Steel*, 1 Ala., 357. 3. If the transfer to Mann, Vail & Co., though in form absolute, was in reality conditional, and the delivery was to take effect only on the happening of a certain event *in futuro*, which did not take place, then there was no real transfer of the account to Mann, Vail & Co., but it always remained the property of the plaintiff. *Lansing vs. Montgomery*, 2 Johns., 382; Story on Sales, § 313. 4. The cashier, by virtue of his general powers, had a right to make the exchange of the account for the drafts. It was but re-

ceiving a debt due the bank, and paying an obligation against it. Yet the court below instructed the jury that the cashier had no authority to cancel said account and take up said drafts, unless specially authorized thereto by the board of directors. 5. The defendants procured the drafts to be discounted for the joint benefit of themselves and Mann, Vail & Co., and used the funds in their joint speculation. They are not, therefore, entitled to be treated as indorsers or sureties of Mann, Vail & Co., although the drafts are in that form. They were principals as much as Mann, Vail & Co., in reality, and were, in fact, the parties to whom credit was given. Nothing short of absolute payment of the drafts, therefore, should discharge them. There is no pretense that Mann, Vail & Co. ever paid the drafts, or paid for the account. The giving of their note under such circumstances is no payment, without a positive agreement to that effect, which is not alleged. 6. The court erred in admitting evidence of the conversation of Mann, Vail & Co., and of the cashier, with Lathrop & Co., which were irrelevant, and in the instructions it gave to the jury, and in the refusal to give those asked by the plaintiff.

*Strong & Fuller*, for respondents:

The drafts upon which the suit was brought, were not the property of the plaintiff, but of Mann, Vail & Co. 1. The assignment of the account of the bank against Bradley, Curtis & Co., to Mann, Vail & Co., was valid. The cashier, by virtue of his office, had power to sell a worthless account, and take therefor a note which he deemed to be good. If not originally valid, the act has been ratified by the directors. 2. The parol evidence offered to vary the effect of this assignment, was properly ruled out. (1) Parol evidence is inadmissible to vary the effect of written contracts. *Gregory vs. Hart*, 7 Wis., 532; 2 Cow. & H's Notes, 1460–1. (2.) The evidence was immaterial. All that the plaintiff sought to prove was, that there was an agreement that Mann, Vail & Co., should not pay the note, unless they succeeded in collecting the account, or making an offset to the drafts. Suppose they had proved this, what then? Mann, Vail & Co., were still the owners of the account. The plaintiff did

not offer to show that any time was limited, within which the offset should be made. Mann, Vail & Co. had acted in perfect good faith, and used all diligence to make the offset. If the plaintiff had been permitted to show a conditional sale of the account, it would only have proved an agreement which Northrop had endeavored to violate, not Mann, Vail & Co. To make the testimony pertinent they should have offered to prove an agreement by which the title to the account would revert, *at some particular time*, to the plaintiff. The plaintiff could not be permitted to show that the account was sold to Mann, Vail & Co., solely for the purpose of enabling them to make an offset, and then that it had prevented them from making the offset, and thereby acquired title to the account. (3.) The plaintiff was estopped from contradicting its official reports to the bank comptroller, made under the oaths of its president and cashier, showing that it was the owner of the note given by Mann, Vail & Co., and that the amount of the principal and interest of the note was due to the bank on "loans and discounts"—which reports they had continuously made up to and including the first Monday of January, 1860. (4.) The bank was estopped from introducing this testimony, because it had informed the defendants, by its financial agent, and by its records and reports, (with which one of the defendants, as a director of the bank since 1856, must be presumed to have been acquainted,) that Mann, Vail & Co. were the owners of this account, and that the defendants were relieved from their liability on these drafts, and the defendants had acted upon this information and had settled with Mann, Vail & Co. accordingly. 3. Bradley & Curtis owning these drafts when they became due, if they had sold them to other parties, the latter would have taken them subject to all defenses which existed against them in the hands of Bradley & Curtis. If Bradley & Curtis had commenced this suit, the defendants could have brought a suit in equity against them and Mann, Vail & Co., alleging that both those parties were insolvent, and could have compelled the offset of the account against the drafts to be made. Bradley, Curtis & Co. could not have collected the amount out of the defendants, the sure-

ties of Mann, Vail & Co., when the principal debtors had a perfect defense to the suit, and when, too, the sureties would thereby lose the whole amount, although the principals had virtually paid it before. The arrangement between the defendants and Mann, Vail & Co., by which the latter were treated as having virtually paid the drafts, was therefore a safe and practicable one, and the defendants having made it upon the representations of the plaintiff that Mann, Vail & Co. were the owners of the account, and upon the express, formal covenant of the plaintiff that it would not do anything to hinder Mann, Vail & Co. from paying the drafts by offsetting the account, the plaintiff is forever estopped from setting up that Mann, Vail & Co. are not the owners of the account. 1 Cow. & H.'s Notes, p. 200 et seq. ; *Welland Canal Co. vs. Hathaway*, 8 Wend., 480 ; *Strong vs. Ellsworth*, 26 Vt., 366 ; *Cowles vs. Bacon*, 21 Conn., 451.

October 15.    *By the Court*, PAINE, J.    The following is a statement of the facts of this case, so far as they are material to the right understanding of the decision of the court. *Lathrop & Co.* borrowed money of the *Racine County Bank* with which to purchase wheat. The wheat was purchased on the joint account of *Lathrop & Co.* and Mann, Vail & Co., of Buffalo, and was shipped to the latter for the purpose of meeting the two bills of exchange which *Lathrop & Co.* drew in favor of the bank on Mann, Vail & Co., for the sum of $3,000 each. These drafts were drawn at thirty days, were accepted, and were discounted by Bradley, Curtis & Co., of Chicago, to whom they were indorsed by the bank. Before their maturity, Mann, Vail & Co. suspended payment, and the drafts were protested. Bradley Curtis & Co., the holders, also suspended at about the same time, being indebted to the *Racine County Bank* in a sum exceeding the amount of the drafts. The cashier of the bank made some effort to collect this indebtedness of Bradley, Curtis & Co., but failed ; and in March, 1855, being about four months after the maturity of the drafts, he assigned this account of the bank to Mann, Vail & Co., for the purpose of enabling them to offset it against the drafts in the hands of Bradley, Curtis & Co. The

assignment was in writing, and contained an agreement that the bank would do nothing to hinder Mann, Vail & Co., or their assigns, from collecting the debt or any part of it. The note of Mann, Vail & Co., payable one day after date, was taken in payment. Mann, Vail & Co. made ineffectual attempts to find Bradley & Curtis for the purpose of suing them and enforcing a set-off. A suit was commenced, but service not obtained. So the matter continued for more than two years, until, in the fall of 1857, the cashier procured from Bradley & Curtis a re-assignment of the drafts to the bank, to be *applied on the debt* of the bank against them, which was the same debt that had been assigned to Mann, Vail & Co. The bank then commenced this suit against *Lathrop & Co.* as the drawers of the drafts, and the latter rely on the transaction between the bank and Mann, Vail & Co., with respect to the drafts and the account of the bank, as a defense, claiming that the account against Bradley, Curtis & Co., on which the drafts were re-assigned to the bank, was, at the time, owned by Mann, Vail & Co., the acceptors, and that the drafts must be considered as paid for with their property, and the drawers therefore discharged.

The counsel for the plaintiff claimed that the assignment of the account to Mann, Vail & Co. was made by the cashier without the authority of the board of directors, and that it was not within the general scope of his power as cashier, and was therefore invalid. But we think this may be conceded for the purposes of the case, and yet that the question was entirely immaterial, for the reason that it abundantly appears from the evidence that the assignment was ratified by the bank. It was regularly entered upon their books, so as to show fully the nature of the transaction, so far as the fact of the transfer of the account and the consideration for it were concerned. These were examined and reported correct by committees appointed for that purpose, and the reports adopted by the board. The note of Mann, Vail & Co. appeared in the semi-annual reports to the bank comptroller; as a part of the " bills receivable " belonging to the bank, which reports were made under oath. We think the jury should have found a ratification of the assignment, notwith-

standing anything that was offered to be proved by the plaintiff upon this point; and that therefore the rejection of this evidence, and the refusal of the court to give the instruction asked as to the powers of the cashier, ought not to reverse the judgment.

The remaining question arises upon the evidence offered by the plaintiff to show that, at the time of the assignment to Mann, Vail & Co., it was agreed that it was for the purpose of enabling them to make the set off, and that their note should not be collected if they failed in making it. This evidence was rejected, for the reason, as it seems, that it would vary the written agreement. The counsel for the appellant contends that this was erroneous, and that the rule excludes parol evidence to vary a written agreement only where the question arises between both parties to it, and not where it arises between one of the parties and a stranger. Some authorites were cited which seem to sustain such a distinction. But from the view we have taken we do not deem it necessary to enter upon a close examination of them. But we must say that even if such a distinction exists, and is properly applicable in some cases, we think there is great doubt of its applicability here. For if it be conceded that the rights of *Lathrop & Co.*, depended upon the character of the assignment of the account to Mann, Vail & Co., then it would seem, necessarily, that its character should be determined according to its legal effect between the parties to the instrument. For it would be very strange, if, as between them, the assignment was absolute, and vested the unqualified ownership of the account in Mann, Vail & Co., to say that the bank could, as against *Lathrop & Co.*, show it to be entirely different, although their rights depended on the precise effect of that transfer.

But we shall not examine this point further, for the reason that we are of the opinion that the evidence offered by the plaintiff, even if admitted, ought not to have varied the result, but that giving it all the effect it could have been entititled to, the jury should still, under proper instructions, have found a verdict for the defendants. And as justifying this conclusion, we will refer, in addition to those already stated,

to the following important facts which were established satis-
factorily by the evidence:

First.   Although Mann, Vail & Co. suspended payment in
the fall of 1854, yet they were considered responsible long
after that, and after the assignment of the account to them.
Mann himself testifies, that for two years after that assign-
ment, they were in a condition to have secured the amount
of these drafts.  That the bank itself considered them re-
sponsible, is evident from the assignment and taking their
note in payment.   For even the parol evidence offered upon
this point, and rejected, went to show that if Mann, Vail &
Co. succeeded in making the set-off, then the only recourse
of the bank would have been upon their note.   And it is
clear that the bank would not have made this arrangement,
which, if carried out as contemplated, would clearly have
discharged the drawers, unless they had supposed the note
of Mann, Vail & Co. to be good at that time.

Second.   On the same day of the assignment, the cashier
of the bank informed *Lathrop* that he had made an arrange-
ment by which *Lathrop & Co.* were relieved from the drafts.
The cashier does not remember this, and does not think he
said so.   But *Lathrop* testifies to it positively, and both his
testimony and Mann's show that, in their subsequent deal-
ings, the drafts were treated as settled, which shows that *La-
throp* must have got such information from some source.

Third.   After the assignment there were extensive deal-
ings between *Lathrop & Co.* and Mann, Vail & Co., which
were conducted upon the understanding that these drafts
were settled.

Fourth.   Before the assignment, pending the attempts by
the cashier to obtain payment from Bradley, Curtis & Co.,
the cashier in a letter expressly requested Mann, Vail & Co.
not to pay the drafts, with a view to enable the bank to se-
cure their claim against Bradley, Curtis & Co., by transfer-
ring it to Mann, V. & Co., as it afterwards did.

We think these facts constitute a complete defense to the
drawers.   The bank and the drawers occupied the relation
to each other of subsequent and prior indorsers.   Then the
substance of the transaction is, that the bank, the subsequent

indorser, for the purpose of securing a claim against the holder, who has become insolvent, interferes with the payment of the paper by the acceptors, requests them not to pay, and subsequently transfers its claim against the holders to them, for the purpose of having it set off against the drafts, thus securing its claim by the acceptors' note, which it was then to collect. At the same time it informs the drawers that they are relieved from the paper, and they deal extensively with the acceptors for several years on that hypothesis. Unless we entirely misapprehend the matter, stronger grounds for holding the drawers discharged could not well be presented. It is true that, at the time of these transactions, the bank was not the holder of the drafts. But by interfering with the regular discharge of the paper, for the purpose of collecting its claim against the holders, we think its action should have the same effect, as far as the prior indorsers are concerned, as though it had been actually the holder at the time. And we then think the defense is complete upon two grounds: First. The transaction was an extension of the time of payment to the acceptors. For, suppose the bank had, after making the assignment, paid the drafts on the same day, as indorsers, to Bradley, Curtis & Co., could they then have maintained an action against Mann, Vail & Co. before the expiration of the days of grace on their note? It would seem not. For if the agreement was, as was offered to be shown by this parol evidence, that the assignment was made for the express purpose of paying the drafts with the account, the bank covenanting to do no act that should hinder its collection, and Bradley & Curtis being insolvent at the time, it would seem clear that the bank could not immediately pay the drafts, and then recover on the drafts and also on the note against Mann, Vail & Co., and thus shift off upon them its worthless claim against Bradley, Curtis & Co. This was therefore an agreement, if taken as claimed by the bank, by which it extended the time of payment to the acceptors, at least to the extent of the time which the note of Mann, Vail & Co. had to run. And we think the effect of such a transaction should be the same upon prior indorsers, as though the bank had again become the holder, before the

June Term, 1860.

RACINE COUN-
TY BANK
v.
LATHROP et al.

maturity of the note of Mann, Vail & Co. That effect is to discharge the drawer or indorser. Burge on Suretyship, 211; Byles on Bills, chap. 18.

The other ground upon which the defense may rest, is that of estoppel. It is evident that the defendants, in their subsequent dealings with the acceptors, acted upon the information of the cashier that they were relieved from that paper. It thus comes directly within the familiar principle that where one has made a representation, upon which another has acted and would, as a consequence, be injured if the first were allowed to deny the representation to have been true, he shall be estopped from denying it. No one can believe that *Lathrop & Co.* would have remained inactive for three years, without attempting to secure themselves for their liability on those drafts, if they had not been induced thereto by the representation of the cashier. Such is not the habit of business men of ordinary prudence. And it must be presumed upon such facts, that they would be injured by allowing the bank now to turn round and hold them as drawers. It would seem a palpable violation of the entire spirit of the law relative to the vigilance and good faith of parties to negotiable paper, toward prior parties to whom they intend to have recourse.

And it may be observed that the very application of the account to the drafts which these defendants insist on, is the one which it was the express object of the agreement between the bank and Mann, Vail & Co. to secure. And in buying back the drafts, they expressly applied that account as the consideration. They should then be treated as paid with the property of Mann, Vail & Co., and the remedy of the bank is on their note. To hold otherwise would be to allow the bank to take its chance of securing its claim against Bradley, Curtis & Co., through several years of delay caused by its own arrangement, and then, when Mann, Vail & Co. become irresponsible, to step in and defeat the accomplishment of its own agreement, and have recourse upon the drawers, who, during all this time, had taken no steps to protect themselves on account of the very arrangement made by the bank.

June Term,
1860.

We think there was nothing in the parol evidence offered that should have had any effect to change the verdict, and that the rejection of it ought not, therefore, to reverse the judgment.

The judgment is affirmed, with costs.