### Jones and another, Adm'rs, vs. Williams.

*Appropriation of payments; when doctrine inapplicable.*

1. In the case of a creditor having several demands against the debtor, it is only where the latter makes a payment with opportunity to exercise his right to appropriate the same, and neglects to do so, that the creditor acquires the right of appropriation.

2. Plaintiffs' decedent held a note of defendant, and also had charge of his mill, as an employee, and from time to time drew out money and charged it to himself in the day book kept at the mill. *Held,* that the amounts so taken and charged constituted cross demands or setoffs in defendant's favor, on an accounting between the parties, and were not *payments* of which defendant could make an appropriation, or to which the principles of the application of payments apply.

3. In an action for the value of such decedent's services in the mill, therefore, it was error to instruct the jury that the moneys so taken might be applied as payments to the note, if the jury should find that defendant had not elected to apply them in payment of the services.

APPEAL from the Circuit Court for *Columbia* County.

This action was brought to recover the amount of a note for $1,560 at one year from date, with interest at ten per cent., executed February 1, 1867, by the defendant to Owen Griffiths, the plaintiffs' intestate; and also to recover for labor and services alleged to have been performed by said Griffiths as a miller, for the defendant, at his request, at his grist and flouring mills in Danville, Dodge county, and Cambria, Columbia county, from February 1, 1867, to June 25, 1872, of the value

of $3,078, with interest. The defendant answered the statute of limitations as to the note, and also denied all the facts alleged as the second cause of action, and averred in substance, that Griffiths was employed between February 1 and October 1, 1867, in the mill at Danville, owned by the defendant and another person, and had been paid in full for the services then rendered; and that from October 1, 1867, until the death of said Griffiths in July, 1872, he was partner with plaintiff in the Cambria mill, owning a one-third interest; that the purchase price of the mill was $10,500; that as Griffiths had not sufficient means to pay for his one-third of it, defendant, by their mutual agreement, took the deed of the mill in his own name, and held the title as security for the money advanced by him in the purchase thereof; that Griffiths agreed to allow " a claim of about $1,600 which he then held against defendant, to be used in the purchase of said mill; " that defendant and Griffiths afterwards expended, in improving the mill, about $18,000, a considerable portion of which was paid out of the earnings of said mill, and the remainder was advanced by the defendant; that while defendant and Griffiths were thus carrying on the business, the latter was in charge of the machinery and the running of the mill, while Griffiths had charge of the books and business of the firm; that the latter drew out from the business and charged to himself, upon the books of the firm, a large sum of money, which, with the money paid out for his funeral expenses, amounted to $1,464.40, as appears from said books; and that since Griffiths' death the defendant had paid to his widow for her support out of the earnings of said mill, $439.34. The answer further alleges that Griffiths, at the time of his death, was largely indebted to defendant for money advanced for the purchase and improvement of said mill property; and the defendant is, and at all times since the death of Griffiths has been, ready to settle with his representatives the business of said partnership.

At the trial, plaintiff's evidence tended to show that Griffiths worked for the defendant at the Cambria mill from the fall of 1867 until a short time before his death in 1872; that he attended to the grinding, etc., and his services were worth from $45 to $50 per month. The defendant's evidence tended to support the averments of his answer as to a joint purchase of the mill and a partnership in the business. It appears that the note in suit was found among Griffiths' papers after his death. It was admitted that the legal title to the Cambria mill continued to be in the defendant during the whole period in question.

The court submitted to the jury the question of fact as to whether Griffiths was a partner in the mill business or a hired servant. It refused an instruction asked by the defendant, to the effect that, if Griffiths was in the defendant's employ, and during that time had drawn from defendant a large sum in goods and money, this was a valid offset to his claim for services, and could not be defeated by any claim of plaintiffs against the defendant which was barred by the statute of limitations. At plaintiffs' request the court gave instructions, which are sufficiently recited in the opinion, to the effect that the amounts received by Griffiths might be applied by the jury to the payment of the note, if they found that there was no partnership.

Verdict for the plaintiff for $3,461.54; a new trial was denied; and defendant appealed from a judgment on the verdict.

*S. U. Pinney*, for the appellant, as to the general rule governing the application of payments, cited 2 Parsons on Con., 629; Willard's Eq., 92–103; *Cremer v. Higginson*, 1 Mason, 338. As to the *time* when the debtor or the creditor must exercise his right of appropriation, he cited *Allen v. Culver*, 3 Denio, 284; *Philpott v. Jones*, 2 Ad. & El., 41; *Wright v. Laing*, 3 Barn. & Cress., 165; *Arnold v. The Mayor*, 4 Man. & G., 860; and contended that at whatever time this right is

to be exercised, it is not conclusively done by entries in the books of either party, until those entries are communicated to the other party. *Simson v. Ingham*, 2 Barn. & Cress., 65. He further argued that according to the theory of the plaintiffs, Griffiths' services should have been credited to him on the mill books in which the payments were entered, so that this dealing would constitute a running account between Griffiths and defendant; and that in that case the money so drawn and charged to Griffiths should, as a matter of law, be applied to the extinguishment of the other side of the account, in the order of time in which the several items stood in the account, no special appropriation of payments having been made by either party (*Clayton's Case*, 1 Merivale, 572, 604, 608; *U. S. v. Kirkpatrick*, 9 Wheat., 720, 737-8; *U. S. v. Wardwell*, 5 Mason, 82); that a note is in no sense a part of an account, though, if the debt evidenced by it had been carried into an account, as in some of the cases, it would be considered as a part of it for the purposes of this rule (*Simson v. Ingham*, *supra; Truscott v. King*, 2 Seld., 165); that the acts of Griffiths in keeping the accounts as he did, show that he intended the money to apply elsewhere than on the note, on which no indorsements were made; that his election of such application may be manifested by circumstances, of which the *jury* are to judge (*Taylor v. Sandiford*, 7 Wheat., 13); but that if there was no application by either party, the court should have directed the payments to be applied to the claim for wages. He further contended that the rule requiring an appropriation by the creditor to be made either when the money comes to his hands (*Smith v. Wigly*, 3 Moore & Scott, 175; *Logan v. Mason*, 6 Watts & Serg., 14), or at a reasonable time before controversy has arisen, or at farthest at the time the action is brought (*Allen v. Culver*, *supra*; DANIELS, J., in *Jones v. U. S.*, 17 How., 688-92), is the more just and reasonable one, and sustained by the weight of authority (*U. S. v. Kirkpatrick*, *supra; Robinson v. Doolittle*,

12 Vt., 246; *Callahan v. Boaznan*, 21 Ala., 246; *Gass v. Stinson*, 3 Sum., 98; *Franklin Bank v. Pratt*, 31 Me., 501; *Fairchild v. Holly*, 10 Conn., 184; *Moss v. Adams*, 4 Ired. Eq., 42); that the question was set at rest in this state by *Stone v. Talbot*, 4 Wis., 442; that this case does not fall within the principle of the application of payments to distinct debts, because only *the balance* of an account is considered a debt, but falls under the rules on which merchants' accounts are cast and settled by the law (1 Am. Lead. Cas., 291, and cases cited in note 5; *Sanford v. Clark*, 29 Conn., 457); and that the amount of moneys charged to Griffiths is simply a cross demand, and not a payment. He further contended that, the statute of limitations being insisted on, plaintiff's claim on the note is as effectually *extinguished* as though it had been paid or released (*Brown v. Parker*, 28 Wis., 21; *Howell v. Howell*, 15 id., 60, 61; *Sprecher v. Wakely*, 11 id., 432, 440); that the statute is designed as a security against the loss of evidence (*Pritchard v. Howell*, 1 Wis., 131), and the legal presumption is that defendant has a valid defense against the note; and that, therefore, if the sums charged to Griffiths are to be treated as payments at all, no appropriation of them having been made before this action was brought, the *court* could not now properly apply such payments on the note.

*A. Scott Sloan*, for respondents:

The rule seems to be settled, that where there has been no actual application of the payment by the debtor, and none implied from the circumstances, his right to control the application is lost, and the right after that belongs exclusively to the creditor, who may apply it on which debt he pleases. *Brady v. Hill*, 1 Mo., 225; *Smith v. Applegate*, 1 Daly, 91; *Allen v. Culver*, 3 Denio, 285; *Clark v. Burdett*, 2 Hall, 197; *Hutchinson v. Bell*, 1 Taunt., 558; *Mills v. Fowkes*, 5 Bing. N. C., 455; *Williams v. Griffith*, 5 Mees. & Wels., 300; *Heilbron v. Bissell*, 1 Bailey's Eq., 430; *Mayor v. Patten*, 4 Cranch,

317; *Stone v. Talbot*, 4 Wis., 442. And this application by the creditor may be made at any time, even at the trial (*Bosanquet v. Wray*, 6 Taunt., 597; *Philpott v. Jones*, 2 Ad. & El., 41; 4 Cranch, 317; 3 Denio, 285; 5 Bing. N. C., 450; 4 Wis., 442), and may be made to any debt not illegal, even though barred by the statute of limitations. *Cruickshanks v. Rose*, 1 Moody & Rob., 100; 5 Bing. N. C., 5 Mees. & Wels., and 2 Ad. & El., as cited *supra*. And see 1 Am. Lead. Cas., 291 et seq. The true principle is, that *the ownership of the money determines the right of application.* While it belongs to the debtor, he may apply it to which debt he pleases. The moment it is paid, without any direction, it becomes the property of the creditor, and he may do with it as he will. Co. Litt., 145 a; *Heyward's Case*, 2 Rep., 36 a; 1 Am. Lead. Cas., 308. Even if the court should take the view that neither party could make the application, but that it is to be done by the court according to equity, there is no case justifying an application other than the one adopted in this case. The note was the oldest debt, evidenced by writing, already due and drawing interest at seven per cent.; and the payments should be applied to it under any rule.

COLE, J. The doctrine in regard to the appropriation of payments, as generally stated in the books, is this: Where the debtor makes any payment to the creditor holding different demands against him, he has the right to apply it to what debt he pleases. If the debtor makes no specific appropriation, the creditor may apply the money as he pleases. And when neither party appropriates the payment, the law will apply it according to its own notion of the intrinsic equity and justice of the case. These rules obviously presuppose a payment made by the debtor to the creditor where the former has the power of exercising an election as to its appropriation. If the debtor neglects to exercise an option either at the time

of payment or before the creditor exercises his right, then the act of appropriation devolves upon the latter.

In the case at bar, the circuit court assumed that payments were made which came within the application of these rules of law. The jury were instructed, that if they found the fact to be that the deceased was at work as a servant of the defendant and entitled to wages, and that at the time he commenced laboring, and during the time he was at work, he held a promissory note against the defendant, then any payments made while he held the note and performed the labor might and should be applied on the note, unless they found that the defendant elected, as payments were made, to apply them in payment of services, or that the deceased then, or in his lifetime, made an election to apply the payments upon his claim for services, if he had such a claim. It appeared from the evidence that the deceased had charge of the mill, and that from time to time he drew out money and charged it to himself in the day book which was kept at the mill. These several sums of money thus drawn out by the deceased and charged to himself, were treated by the court as payments made by the defendant where the latter could exercise the right of appropriation. It seems to us that this is a mistaken view of these transactions. These were not payments in the proper sense of the word; and it is obvious from the nature of the case that the defendant had not the power to control the application of the moneys, as he would have where payments are made. Doubtless the defendant knew of the existence of this running account, and that the deceased, Griffiths, was drawing out money which he charged to himself in the account. But there was no direction on his part that these sums should be treated as payments, nor is there any evidence that Griffiths so regarded them. Under these circumstances, the counsel for the defendant insists, and with great reason, that the most that can be said in respect to the moneys thus taken and charged in the account is, that they

were in the nature of cross demands or setoffs, and did not amount to payments where the defendant could make an appropriation, or where the principles of the application of payments apply. Prof. Parsons lays down the rule on this subject as follows: "In general," he says, "the creditor's right of appropriation, springing from the neglect or refusal of the debtor to make such appropriation, exists only where the debtor has in fact an opportunity of making it, and not where the payment was made on his account by another, or in any way which prevents or impedes his exercise of the right of election." 2 Parsons on Con., 631. And *Waller v. Lacy*, 1 Man. & G., 54, is referred to in support of the doctrine of the text. That was the case of an attorney having several demands against his clients, some of which were barred by the statute of limitations, and some not, and who had received from a third person a sum of money on behalf of his client, which he claimed the right to apply to the payment of the earliest items in his account against his client. But says TINDAL, C. J., inasmuch as the client " never had the power of exercising any election as to the application of this sum, the right of the plaintiff to appropriate it never arose." BOSANQUET, J., observes: "The doctrine of appropriation cannot apply to the present case, where money has come to the plaintiff's hands, not by the act of the defendant, but by the act of a third party." The other two judges are equally clear and emphatic in laying down the doctrine that the right to appropriate only applies where payments have been made by debtors to creditors, and where the former have an opportunity of directing the application. The creditor's right of appropriation springs from the failure or neglect of the debtor to exercise his right to make the application when he has the power to make it. This is obviously the reason and philosophy of the rules in regard to the application of payments.

The undisputed facts of this case take it out of the application of these rules. The moneys drawn out by the deceased,

and charged to himself on the account book at the mill, were not payments made by the defendant. There is no evidence whatever that either party so regarded them. They were strictly cross demands or matters of setoff, which would be applied on settlement of the accounts between the parties, but do not fall within the rules of the application of payments. Nor do we think the facts bring the case within the rule in regard to an open current account which is applied in the cases cited in the note to *Mayor, etc., v. Patten* and *Field v. Holland,* 1 Am. Lead. Cas., p. 306. For, not only is it inaccurate to treat the sums drawn out by Griffiths as payments made by the defendant, but there does not appear ever to have been any settlement of these accounts or balance struck by the parties. So that, in whatever view the case is considered, it seems to us the circuit court was wrong in holding that the law in regard to the appropriation of payments applied to and governed the case.

*By the Court.*—The judgment of the circuit court is reversed, and a new trial ordered.