GALLUN and another, Respondents, vs. SEYMOUR, Appellant.
GALLUN and another, Appellants, vs. SEYMOUR, Respondent.

*February 26 — March 18, 1890.*

*Contracts: Application of partial deliveries: Damages: Interest.*

1. A contract for the delivery of 1,000 cords of tanners' bark for a certain price per cord — 300 cords to be delivered in June, 350 cords in July, and 350 cords in August, "the whole complement to be delivered at no later date than August 31," is not an entire contract in the sense that there can be no breach before August 31, but each failure to deliver the stipulated quantity for any month constitutes a distinct breach; and, for the purpose of measuring the damages in view of the fluctuating market price, the delivery in each month will be applied upon the quantity agreed upon for that month and not upon any previous deficit.

2. In the absence of any proof that the market price was higher in September than in June, a delivery in September was properly applied upon the oldest or June deficit.

3. In an action for a breach of the contract the plaintiff was entitled to interest on the amount of damages from the commencement of the action.

APPEALS from the Circuit Court for *Milwaukee* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

*August F.* and *Albert F. Gallun* brought an action in the circuit court against *Richard A. Seymour, Jr.*, to recover damages against him for an alleged breach of contract for the delivery of 1,000 cords of hemlock bark. The following is a copy of the contract upon which the action is based, viz.:

" Articles of agreement made and concluded upon at the city of Milwaukee, state of Wisconsin, this 31st day of March, 1887, by and between Seymour Brothers, of the city and county of Manistee, state of Michigan, parties of the first part, and A. F. Gallun & Son, of the city and county of Milwaukee, state of Wisconsin, parties of the second part: Witnesseth, that the parties of the first part promise and agree to deliver to the parties of the second part, at their Empire Tannery in the city of Milwaukee aforesaid, and free of charge on the dock of said tannery, 1,000 cords of new, merchantable, well cured and dried tanners' hemlock bark, peeled in the spring season of the year 1887, at or near the east shore of Lake Michigan, in the state of Michigan, said bark to be delivered as follows: During the month of June, 1887, 300 cords; during the month of July, 1887, 350 cords; during the month of August, 1887, 350 cords. The whole complement to be delivered at no later date than August 31, 1887. In consideration whereof, the parties of the second part promise and agree to pay to the parties of the first part, after true and faithful fulfilment of their, the parties of the first part, promises and agreements as herein named, the sum of $7.50 for each and every cord of such new, merchantable, well cured and dried tanners' hemlock bark, as they are delivered from time to time, on demand."

On the trial it was admitted that the defendant deliv-

ered only 736⅞ cords of bark on the contract. Of the 736⅞ cords delivered, 74¼ cords were delivered in June, 231⅚ cords in July, 268⅔ cords in August, and 162⅔ cords in September, 1887, leaving a deficiency on the whole contract of 263⅛ cords. It was also admitted that there was no special application of the bark delivered, or any request to have any special application of the bark, on any one month. It is also admitted that the bark actually delivered was accepted and paid for at the contract price.

The only question raised in the court below was as to the amount of damages the plaintiffs were entitled to recover. For the purpose of ascertaining that fact, the court, with the apparent approval of the respective parties, submitted to the jury three questions, as follows: " (1) What was the market price at Milwaukee, Wisconsin, of hemlock bark of the kind and quality as named in the contract on June 30, 1887? *Answer*. Eight dollars. (2) What was the market price at Milwaukee, Wis., of hemlock bark of the kind and quality as named in the contract on July 31, 1887? *A*. Nine dollars. (3) What was the market price at Milwaukee, Wis., of hemlock bark of the kind and quality as named in the contract on August 31, 1887? *A*. Nine dollars." No exceptions were taken to the verdict of the jury as to the prices fixed in their verdict. The learned circuit judge directed judgment to be entered in favor of the plaintiffs for the sum of $331.50, with interest from the commencement of the action, with the costs of the action. From the judgment both parties appealed to this court.

For the plaintiffs there was a brief by *Stark & Sutherland*, and oral argument by *Geo. E. Sutherland*. They contended, *inter alia*, that the clause " The whole complement to be delivered at no later date than August 31, 1887," made the contract an entirety so that there could be no breach until after August 31. The deliveries of bark should be governed by the rule with reference to the application of

money payments, that "where there are several distinct debts the court will apply payments to those oldest in point of time." *Sprague v. Hazenwinkle*, 53 Ill. 419; *Thompson v. St. Nicholas Nat. Bank*, 21 N. E. Rep. 57, 60, and note; *Neidig v. Whiteford*, 29 Md. 178, 185; *St. Albans v. Failey*, 46 Vt. 448, 452; *Allen v. Brown*, 39 Iowa, 330; *Hollister v. Davis*, 54 Pa. St. 508, 510; *Souder v. Schechterly*, 91 id. 83, 88; *Goetz v. Piel*, 26 Mo. App. 634; *Mackey v. Fullerton*, 7 Colo. 556; *Plain v. Roth*, 107 Ill. 588; *Bancroft v. Holton*, 59 N. H. 141; *California Bank v. Webb*, 94 N. Y. 467; *State v. Chadwick*, 10 Oreg. 423; *Garrett's Appeal*, 100 Pa. St. 597. And see *Smith v. Vaughn*, 78 Ala. 201.

For the defendant the cause was submitted on the brief of *J. E. Wildish*. To the point that payments will be applied by the court not to oldest debt but according to justice, he cited *National Bank v. Mechanics' Nat. Bank*, 94 U. S. 437; *The Martha*, 29 Fed. Rep. 708.

TAYLOR, J. It will be seen from the facts stated that the learned circuit judge, in getting at the plaintiffs' damages, applied the 162⅔ cords delivered in September, and after the time for the delivery of the last instalment of the bark, upon the deficiency of the delivery in June under the contract. The learned counsel for the defendant contends that the 162⅔ cords delivered in September should have been applied, first, to extinguish the deficiency of bark delivered in August, and the balance to the deficiency delivered in July. The learned counsel for the plaintiffs contend that all the bark delivered should be applied, first, to make up the 300 cords agreed to be delivered in June, and the 350 cords agreed to be delivered in July, so that the whole deficiency would be in the August delivery, and consequently the damages should be estimated as upon the failure to deliver the 350 cords in August. Under the theory of the application of the 162⅔ cords of bark as claimed by the

Gallun and another vs. Seymour.

defendant, and upon the theory, which seems to have been acquiesced in by all the parties and the court, that the plaintiffs were entitled to recover as damages the difference in value of the bark as fixed by the contract and the actual value on the last day of the month in which the deficit occurred, the damages would have been very much less than found by the court. The shortage in July was 118⅓ cords; in August, 81⅜ cords. Under defendant's theory, the 162⅜ cords delivered in September would have covered all the shortage in July and August, except 37¾ cords, and left a shortage of 225 6–8 cords in June; and the damages would have been reduced to 50 cents per cord on the 225 6–8 cords, and to $1.50 per cord on the 37¾ cords, short in July,— in all, the sum of $168.93.

Upon the theory of the plaintiffs' counsel, by applying all the bark delivered, first to make up the 300 cords to be delivered in June, then to make up the 350 cords in July, and the balance to make up the deficiency, as far as it would, in August, there would be a deficiency in August of 263⅛ cords; and the damages on that deficiency, according to the rule adopted by the parties and the court, would be $1.50 per cord, or $394.68, instead of $331.30, as allowed by the court. The learned counsel for the plaintiffs contend that, in the first place, the contract was an entire contract, and there could be no breach until the 31st of August, 1887. If that contention be correct, then the rule of damages claimed by them would be as they contend. We cannot, however, agree with the learned counsel in this construction of the contract. It seems to us very clear that it was a material part of the contract that 300 cords should be delivered in June, 350 in July, and 350 in August, and that, upon a failure to deliver the 300 cords in June, the contract was broken, and plaintiffs could have maintained an action for any damages they had sustained by a failure to make such delivery; and it is the same as to the failure to deliver in

July and August.   There were three breaches of the contract shown on the trial.   It is a stronger case than the cases of *Hill v. Chipman*, 59 Wis. 211; *Missouri Furnace Co. v. Cochran*, 8 Fed. Rep. 463.   It is to us a clear case of an agreement to deliver 1,000 cords of bark in three instalments,— one to be delivered in June, another in July, and another in August; and a failure to deliver any part of either instalment within the time mentioned for its delivery is a breach of the contract, as much so as if the agreement had been to pay $1,000,— $300 in June, $350 in July, and $350 in August.

The counsel for plaintiffs further contend that, admitting that the failure to deliver any instalment within the time specified would be a breach of the contract, still the bark received in July should be applied to make up the deficiency in June, and the amount received in August should be applied to make up the deficiency in July.   We do not think the plaintiffs, in the absence of any agreement to that effect, would have the right to make such application of the bark delivered in the months of July and August.   When the month of July commenced, the plaintiffs had a cause of action against the defendant for the breach of the contract to deliver in June, and when the defendant delivered the bark in July the presumption is that he delivered it on his contract to deliver 350 cords in that month, and not that he delivered it to make up any deficiency in June.   The rights of the parties as to the June delivery were fixed on the expiration of the month, and the plaintiffs were not bound to receive any more bark to apply on that part of the contract, nor was the defendant bound to deliver any more thereon.   We think the just rule is to apply what was delivered in each month upon the contract for that month, in the absence of any agreement to apply it differently.   Excluding these views of the construction of the contract and the application of the deliveries of the bark, the judgment is sufficiently favorable to the plaintiffs.

The defendant's appeal presents the question as to the correctness of the learned circuit judge in applying the 162 cords of bark delivered and accepted on the contract after a failure to deliver the whole amount on or before the 31st of August, 1887.   Under our construction of the contract, the plaintiffs had three causes of action against the defendant when the bark was delivered in September — *first*, for a failure to deliver 300 cords in June; *second*, for a failure to deliver 350 cords in July; and, *third*, for a failure to deliver 350 cords in August.   Had these defaults been for a failure to pay money instalments, there could be no question as to the right of the plaintiffs, in the absence of any directions by the defendant, to apply the payment to the oldest debt, and, if no application had in fact been made, the court would so apply it as a general rule, when all the debts were due and equally secured.   *Hannan v. Engelmann*, 49 Wis. 278; *Yellow River Imp. Co. v. Arnold*, 46 Wis. 214; *Cuer v. Ross*, 49 Wis. 652; *Robbins v. Lincoln*, 12 Wis. 1; *Turner v. Pierce*, 31 Wis. 342; *Jones v. Williams*, 39 Wis. 300; *Stone v. Talbot*, 4 Wis. 442; *Sleeper v. Goodwin*, 67 Wis. 592; *Jenkins v. Gunnison*, 50 Wis. 388, and the cases cited by the learned counsel in their briefs. It might be urged that this rule would not be just in all cases where the payment is to be made in property at a fixed price, and this case, to some extent, tends to show that such rule would not be always a just one.   At the time the defendant delivered the bark in September, the plaintiffs, upon the findings of the jury as to the prices, had three causes of action against the defendant,— one for a failure to deliver 225 + cords of bark in June, for which failure the plaintiffs were entitled to recover as damages, fifty cents per cord; a cause of action for a failure to deliver 118 + cords in July, and 81 + cords in August, and for which failures the plaintiffs were entitled to recover damages at the rate of $1.50 per cord.   Afterwards the defendant delivered 162

cords on the contract. Suppose it had been shown that when those 162 cords were delivered the bark had advanced so that it was in fact worth $9.50 instead of $8 in June and $9 in July and August, there would be a very grave question whether a court, in making an application of those 162 cords for the parties, would so apply them as to enhance the plaintiffs' damages $1 per cord, when it could be be applied so as to avoid that result. There is, however, nothing in this record which shows the value of bark at the time these 162 cords were delivered and accepted; and, in the absence of any proof on the subject, we cannot say that there was any injustice in making the application as was done by the court. Had there been no change in the value of bark, or had it lessened in value from the June price, there could be no question as to the propriety of making the application of the 162 cords to the June deficit; and, in the absence of any proof on that subject, there is no presumption that there was any enhancement of its value over the June prices in September.

The learned counsel for the defendant also claims that it was error to allow interest from the commencement of the action on the amount of damages. We think there is no force in this objection. *Whereatt v. Ellis*, 68 Wis. 69; *Van Rensselaer v. Jewett*, 2 N. Y. 135; *Chapman v. C. & N. W. R. Co.* 26 Wis. 295; 1 Suth. Dam. 174.

*By the Court.*— The judgment of the circuit court is affirmed upon both appeals.