Northern National Bank vs. Lewis and others.

Northern National Bank, Appellant, vs. Lewis and others, imp., Respondents.

*December 13, 1890 — January 13, 1891.*

(*1*) *Chattel mortgage securing several notes: Order of payment.* (*2, 3*) *Option to purchase land given as security: Agency: Parol evidence.*

1. Where a chattel mortgage is given to a bank to secure the payment of several notes held by it against the mortgagors, and there is no provision as to the order in which such notes are to be paid, the bank may apply the proceeds of a foreclosure sale to the payment of any of the notes, in its discretion.

2. By a contract under seal a firm which was indebted to a bank gave to the president thereof, in his own name, an option to purchase certain lands. The contract provided that in case he purchased the lands he might retain out of the purchase price a sum sufficient to pay the indebtedness of the firm to the bank. *Held,* that parol evidence was admissible to show that the contract was tal e 1 by the president as agent of the bank, for its benefit, and as security for the payment of said indebtedness.

3. If such contract was so taken for the benefit of the bank and as such security, and the president thereafter received a sum of money for the release or surrender thereof to other creditors of the firm, who had attached the lands, it would seem that the sum so received should be applied upon the indebtedness of the firm to the bank.

APPEAL from the Circuit Court for *St. Croix* County.

The following statement of the case was prepared by Mr. Justice Cassoday:

This is an action to enforce collection against the makers and indorsers of two promissory notes, of which the following are copies, to wit:

"$3,199.　　　　St. Paul, Minn., July 23d, 1887.

"Sixty days after date we promise to pay to the order of *Lewis & Ferguson Bros.*, thirty-one hundred and ninety-nine dollars, at our office, St. Paul, value received, with in-

terest before and after maturity at the rate —— per cent. per annum until paid.     [Signed]     ROOD & MAXWELL."

" $2,000.                 ST. PAUL, MINN., July 23d, 1887.

" Ninety days after date we promise to pay to the order of *Lewis & Ferguson Bros.*, two thousand dollars, at our office, St. Paul, value received, with interest before and after maturity at the rate of —— per cent. per annum until paid.              [Signed]     ROOD & MAXWELL."

It is alleged in the complaint, among other things, in effect, that July 25, 1887, the defendants, composing the firm of "*F. H. Lewis & Ferguson Bros.*," for value received, indorsed and delivered said notes to the plaintiff; that at the maturity of said notes respectively, they were presented for payment, but were not paid, of which due notice was given to said indorsers, and said notes were thereupon protested for nonpayment; that said payees and indorsers renewed said notes, January 26, 1888, and March 29, 1888, respectively, by giving renewal notes and paying interest to those dates; that no part of either of the principal sums named in said notes or said renewal notes has ever been paid, and that there is now due and unpaid thereon $5,199, with interest at eight per cent. from May 29, 1888.

The makers of said notes, Rood & Maxwell, made no answer, but the indorsers thereof made answer, and, among other things, denied that *Lewis* was a partner of *Ferguson Bros.*, and alleged in effect that after maturity of said notes, and before the commencement of this action, the amounts due on said notes were fully paid to the plaintiff by said Rood & Maxwell, or in their interest and behalf, and that there was nothing remaining due thereon; that said indorsers made said renewal notes and paid said interest in ignorance of the fact that said notes had been paid by Rood & Maxwell.

Upon the trial of said action, the following facts appeared, in effect, from the undisputed evidence: Rood & Maxwell

resided at St. Paul.  September 19, 1887, they were in-debted to the plaintiff in the sum of $24,428.14 upon sundry notes, some of which were secured by indorsements of third parties, and some were entirely unsecured, and some of which were overdue, and some not yet due, including the two notes mentioned in said complaint.  To secure said notes they on that day executed and delivered to the plaintiff a chattel mortgage upon the saw-mill and all buildings, tram-ways, docks, structures, tools, machinery, apparatus, appli-ances and appurtenances of every kind and description whatsoever, therein or thereto belonging or in any wise appertaining, located and being in the town of Washburn, Bayfield county, Wis., upon the premises therein specifically described, which said mortgage was thereupon filed in the proper office.  Afterwards, and on the same day, the said Rood & Maxwell entered into a written agreement with E. A. Shores, of Ashland, who was at the time president of the plaintiff bank, to the effect that the said Rood & Max-well, in consideration of $5 to them in hand paid by said Shores, thereby agreed to give, and did thereby give, to said Shores, his heirs and assigns, for the term of thirty-five days from and after September 19, 1887, the privilege of pur-chasing all the lands therein described upon the terms and conditions that the total purchase price of said land should be $100,000; that said Shores, his heirs or assigns, should assume and pay the balance of $30,000 due on the mortgage on said lands held by the railway company, except the in-terest thereon to the date of such purchase; that said Shores, his heirs or assigns, were to pay to said Rood & Maxwell the balance of said $100,000, to wit, $70,000 in cash, deducting therefrom the unpaid interest on said mort-gage, if any; and provided, further, that said Shores, his heirs or assigns, should also retain out of said $70,000 such further sum as might be sufficient to pay whatever indebt-edness might be due and owing by said Rood & Max-

well to the plaintiff at the date of said purchase by said Shores, his heirs or assigns; that if said Shores, his heirs or assigns, concluded to take said lands within the time therein limited, and should deposit in the plaintiff bank said sum of $70,000, upon notice thereof said Rood & Maxwell were to make, execute, and deliver to said plaintiff, for said Shores, his heirs or assigns, a good and sufficient warranty deed of said lands, subject, however, to said mortgage to the railway company, and the said plaintiff, upon placing to the credit of said Rood & Maxwell said sum of $70,000, less whatever sum might be necessary to pay such interest, and less whatever sum might be necessary to pay whatever indebtedness might then be due and owing to said plaintiff by said Rood & Maxwell, should deliver said deed to said Shores, his heirs or assigns. October 22, 1887, the Third National Bank of St. Paul levied an attachment upon all the property of Rood & Maxwell, including the lands covered by said option. Rood & Maxwell failed and made an assignment of all their property, real and personal, for the benefit of their creditors, to one O. Flanders, October 24, 1887. Rood & Maxwell were owing the C. C. Thompson & Walkup Company, of Chicago, a large amount of money. That company succeeded to whatever rights the said Third National Bank had in said premises, by an assignment. The plaintiff foreclosed said chattel mortgage, and on December 14, 1887, sold the property included therein for the sum of $15,000, and applied the proceeds thereof, less expenses, being about $14,600, upon the claims it held against Rood & Maxwell. Only a comparatively small amount thereof was applied on the notes in suit. February 24, 1888, the said E. A. Shores and wife, by an instrument in writing under their hands and seals, in consideration of $5,750 to them in hand paid, sold, assigned, and conveyed to the said C. C. Thompson & Walkup Company, a corporation under the laws of Illinois, all their right, title, and interest in and

to all the pine lands described in said option contract, and they particularly sold, assigned, and conveyed to said corporation all their rights under and by virtue of said option contract. That instrument was duly witnessed and acknowledged by the said Shores and wife, and recorded in the proper office.

At the close of said testimony, the court directed a verdict in favor of said indorsers, *F. H. Lewis & Ferguson Bros.* From the judgment entered thereon, the plaintiff appeals.

For the appellant there were briefs by *Lamoreux & Gleason,* attorneys, and *Pinney & Sanborn,* of counsel, and oral argument by *S. U. Pinney.*

For the respondents there was a brief by *Brooks & Hendrix,* and oral argument by *F. C. Brooks.*

CASSODAY, J. *Lewis & Ferguson Bros.,* as indorsers for Rood & Maxwell, can only be held liable on the notes in suit for any balance that may remain unpaid after applying thereon the net proceeds of any and all securities given by Rood & Maxwell to the plaintiff bank, or for its benefit, as collateral thereto. This general proposition is virtually conceded so far as the net proceeds on the foreclosure of the chattel mortgage are concerned. The defendants contend, however, that a much larger amount of the moneys received upon the foreclosure of the chattel mortgage should have been applied upon the notes in suit. The chattel mortgage contains a stipulation for the renewal and extension, from time to time, of the claims therein mentioned, as might be agreed upon by the parties for a limited period, but contains no specific direction as to which, if any, of such claims should be first paid out of such net proceeds, nor anything as to the order of such payments. In the absence of any designation by Rood & Maxwell as to the application of the moneys received on the foreclosure

sale, the plaintiff would seem to be at liberty to apply the same upon any of said claims, in its discretion. *Stone v. Talbot*, 4 Wis. 442; *Robbins v. Lincoln*, 12 Wis. 7; *Hannan v. Engelmann*, 49 Wis. 283; *Gallun v. Seymour*, 76 Wis. 257. Nothing appears in the record before us to indicate that the plaintiff exceeded its authority under the above rule in making such application. Whether a different showing may be made upon a new trial, it is impossible here to tell.

It was in effect held by the trial court that the option contract given September 19, 1887, by Rood & Maxwell to and in the name of E. A. Shores, was really so given by them, and received by Shores, as president or agent of the plaintiff bank and for its use and benefit, and as further security for the payment of the indebtedness which Rood & Maxwell then owed the bank; and that the $5,750 which Shores received, February 24, 1888, of Thompson & Walkup Company on account of that option contract, was so received for the use and benefit of the plaintiff, and must be applied on its said indebtedness against Rood & Maxwell; and that by such application the notes in suit had been paid and satisfied. It is contended on the part of the plaintiff that the admission of parol testimony to prove that the transactions named were both for the use and benefit of the plaintiff, instead of Shores individually, was a contradiction of the writings, and hence error. Quoting from an English judge, RYAN, C. J., stated the rule thus: "There is no doubt that where such an agreement is made, it is competent to show that one or both of the contracting parties were agents for other persons, and acted as such agents in making the contract, so as to give the benefit of the contract on the one hand to, and charge with liability on the other, the unnamed principals, and this whether the agreement be or be not required to be in writing by the statute of frauds; and this evidence in no way contradicts the written agreement. It does not deny that it is binding on those whom,

on the face of it, it purports to bind, but shows that it also binds another, by reason that the act of the agent in signing the agreement, in pursuance of his authority, is in law the act of the principal." *Weston v. McMillan,* 42 Wis. 569. To the same effect, *Stowell v. Eldred,* 39 Wis. 614; *Wiener v. Whipple,* 53 Wis. 302; *Kirschbon v. Bonzel,* 67 Wis. 178; Mechem, Ag. §§ 695–701. It is true the option contract was made by one of the partners in the name of the firm, and was under seal; but it is apparent that it would have been equally binding without any seal, and hence the same rule is applicable. *Ibid.;* Mechem, Ag. § 702. It follows that there was no error in admitting parol evidence tending to prove that the transactions were for the use and benefit of the plaintiff.

We are clearly of the opinion, however, that there was evidence on the part of the plaintiff tending to prove that the option contract was taken by Shores for his own individual benefit, and not for the use or benefit of the plaintiff. This conflict of evidence was certainly such as to necessitate the submission of the case to the jury. It is true that, had the option been exercised by Shores, his heirs or assigns, then it would have been necessary for him or them to have deposited in the plaintiff bank the $70,000 to the credit of Rood & Maxwell, subject, however, to the payment of their indebtedness to the bank; but by the terms of the contract the bank was only to have such benefit upon the exercise of such option. But neither Shores nor his heirs nor his assigns ever exercised such option, and it is plausibly urged that all right to exercise the same, by its terms, expired October 24, 1887, the day on which Rood & Maxwell made a general assignment for the benefit of their creditors. Nevertheless it is conceded that the Third National Bank of St. Paul acquired a lien by way of an attachment upon the lands covered by the option, October 22, 1887, two days prior to the general assignment; and that

the Thompson & Walkup Company acquired that lien by an assignment from the Third National Bank. To make that lien available, the Thompson & Walkup Company deemed it necessary to procure, and did procure, from Shores the transfer of said option, and paid him therefor $5,750, February 24, 1888, as mentioned in the foregoing statement. Upon the part of the plaintiff it is claimed that such transfer was a mere assignment, which gave the plaintiff no additional rights; while on the part of the defendants it is contended that it was a release or surrender of a claim or right to the lands given by Rood & Maxwell prior to said attachment, and hence should inure to their benefit and the benefit of the bank. If the option contract was in fact taken by Shores as president or agent of the bank, and for its use and benefit, and as further security for its indebtedness against Rood & Maxwell, and the $5,750 was received as indicated for the release or surrender of that contract in order to make such attachment more available, then there would seem to be good reason for holding that the money so received should be regarded as paid on account of such prior claim or right so created by Rood & Maxwell, and hence should be applied upon such indebtedness. If the plaintiff, by itself or agent, as such real owner of the option contract, received therefor the $5,750, it is in no position to claim that such contract was valueless by reason of the option never having been exercised, or its having previously expired, or the action of the bank in relation to the same having been *ultra vires*, or for any other reason. If such were the facts, then it is enough to know that Shores, acting for the plaintiff and the Thompson & Walkup Company, treated the contract as a valid claim upon the lands, created by Rood & Maxwell as further security for their indebtedness to the bank. The questions presented therefore resolve themselves into disputed questions of fact, upon which the evidence is more or less con-

flicting, and hence the case should have been submitted to the jury.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.