THE FIRST NATIONAL BANK OF MILWAUKEE, Respondent, vs. FINCK, imp., Appellant.

*September 1 — September 20, 1898.*

(1) *Findings: Immaterial error.* (2–5) *Joint debtors: Assumption of debt by one: Individual note as collateral security: Remedies: Application of proceeds of execution levy and of collaterals.*

1. Failure to find upon a particular point is not a material error, in the absence of a specific request, where the evidence upon that point would sustain a finding in accord with the judgment.
2. Assumption of a joint debt by one of the debtors and a promise to hold the other harmless therefrom, do not render the latter a surety merely, as between him and the creditor, where the creditor did not consent to any change of liability, and received no consideration for such a consent.
3. One joint debtor may give his individual note as collateral security for the joint indebtedness, and the taking of it does not affect any rights of the creditor upon the original debt; nor does the prosecution of the collateral note to judgment affect the right of action upon the original debt, at least until satisfaction is obtained.
4. Where a debtor is liable upon a joint note and also upon an individual note, the amount realized on an execution against him, levied under a judgment embracing the entire indebtedness, may properly be applied by the creditor exclusively to the payment of the individual note.
5. The proceeds of collaterals pledged to secure a specific debt can only be applied to the payment of that debt.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Affirmed in part; reversed in part.*

This is an action in equity to foreclose a lien of the plaintiff upon certain stocks which had been pledged to the plaintiff by the defendants *Finck* and Meyer, and by the defendant Meyer alone.   The facts appearing upon the trial were, in substance, as follows: Prior to January 1, 1896, Meyer and *Finck* were partners, and, as such, borrowed money of the plaintiff bank to the amount of $17,000, for which they gave their firm notes.   The firm was dissolved January 1, 1896; but these notes were not paid, and were afterwards renewed by the giving of joint notes, signed with the individual names of W. A. Meyer and *O. A. Finck*.   Prior to the dissolution of the partnership, the firm of Meyer & Finck had owned the entire capital stock, being 1,200 shares of $10 each, of a real-estate company known as the Globe Trading Company, each owning 600 shares of such stock; and they had pledged the entire 1,200 shares to the bank as collateral for their indebtedness of $17,000.   After the dissolution of the firm of Meyer & Finck, Meyer opened a large retail dry-goods store.   On or about July 8, 1896, Meyer, in consideration of the conveyance of certain property, made a written agreement with *Finck* to pay the said promissory notes of $17,000, with interest, and hold *Finck* harmless therefrom.   This agreement was not shown to the cashier of the plaintiff bank, but Meyer informed him that he had agreed with *Finck* to pay the $17,000 notes.

After the dissolution of the firm of Meyer & Finck, they desired to divide the property of the Globe Trading Company between themselves, and they went to the cashier of the bank, and suggested that they would each organize a new company, and each take half of the assets of the Globe Trading Company, and that the $17,000 debt should be divided, and each assume half of it, and each pledge his stock

in the new corporations for his half of the debt. To this arrangement the cashier refused to consent. However, Meyer and Finck did thereafter divide the assets of the Globe Trading Company, each forming 'a new corporation, and causing the old corporation to convey half of its assets to each of the new corporations, respectively. It is claimed in the testimony of Mr. Meyer that the cashier of the bank consented that he might use his half of the Globe Trading Company assets in buying merchandise, but this is denied by the cashier. *Finck* testifies that he and Meyer agreed that neither should use these assets without consent of the bank. The fact is that Mr. Meyer did use his half of the assets of the Globe Trading Company in buying merchandise for his mercantile business.

After Meyer opened his individual business, he borrowed of the bank $24,000 on his own account, and gave his individual notes therefor. In November, 1896, there was due the bank upon the Meyer & Finck notes $17,000; upon the Meyer notes $24,000 and some accrued interest; and the bank became somewhat apprehensive as to Meyer's solvency, and Meyer executed to the bank a demand note on the 17th of November for $41,260.01, being the total amount due upon all the notes, with interest, at that time. The original notes of Meyer & Finck, for $17,000, were not surrendered; but it is claimed in this action by Meyer that they were in fact paid by his demand note, while, on the other hand, it is claimed by the bank that the demand note was simply received as collateral security. Upon this last note suit was at once brought, judgment obtained, execution issued, and Meyer's stock sold, and the sum of $10,319.44 realized thereon. After payment of the costs of suit, the amount realized upon the execution was claimed to be applied by the bank upon Meyer's individual notes of $24,000. The bank still held the 1,200 shares of Globe Trading Company stock, and also certain other collaterals which had been

deposited by Meyer with them, when this action was brought to foreclose all the collaterals.

An interlocutory order was entered directing the sale of all the collaterals which belonged to Meyer alone; and they were sold, realizing the sum of $100, which was credited upon Meyer's individual debt, but the 1,200 shares of Globe Trading Company stock were left until the final decree. The court found, in substance, that Meyer and *Finck* still owed the bank the entire sum of $17,000, and that Meyer individually owed the bank $14,414.19, and that the bank had rightfully applied the sum realized upon the execution upon Meyer's individual debt; that the Globe Trading Company stock should be sold; and that the proceeds of 600 shares should be applied upon Meyer's individual debt, and the proceeds of the remaining 600 shares should be applied upon the Meyer & Finck debt. From judgment in accordance with these findings, *Finck* appeals.

For the appellant there was a brief by *Quarles, Spence & Quarles,* attorneys, and *William C. Quarles,* of counsel, and oral argument by *Charles Quarles.* They contended, *inter alia,* that the entry of judgment on the $41,000 note was a bar to any further action on any of the indebtedness which it evidenced. By obtaining a judgment of record the bank obtained security of a higher nature, which operated as a merger or extinguishment of the same demand represented by the joint notes. *Robertson v. Smith,* 18 Johns. 459; *Nichols v. Burton,* 5 Bush, 320; *Peters v. Sanford,* 1 Denio, 224; *Sydam v. Cannon,* 1 Houst. 431; *Peoria S., L. & T. Co. v. Elder,* 165 Ill. 55; *Olmstead v. Webster,* 8 N. Y. 413; *Averill v. Loucks,* 6 Barb. 19, 25; *Crosby v. Jeroloman,* 37 Ind. 264; *Sloo v. Lea,* 18 Ohio, 279; *Doniphan v. Gill,* 1 B. Mon. 199; *Smith v. Black,* 9 Serg. & R. 142; *Ward v. Johnson,* 13 Mass. 148; *Pierce v. Kearney,* 5 Hill, 82–85; *In re Herrick,* 12 Fed. Cas. 43; *McMaster v. Vernon,* 3 Duer, 249; *Moale v. Hollins,* 11 Gill & J. 11. The rule giving a creditor holding several

obligations or claims against his debtor the right to apply a payment made to him by the debtor in the absence of any application by the latter, is confined to cases of voluntary payments. *Orleans Co. Nat. Bank v. Moore*, 112 N. Y. 543; *Cowperthwaite v. Sheffield*, 1 Sandf. 416, 453; *Blackstone Bank v. Hill*, 10 Pick. 129; *Bridenbecker v. Lowell*, 32 Barb. 9; *Cage v. Iler*, 5 Sm. & M. 410; *Merrimack Co. Bank v. Brown*, 12 N. H. 321; *Perris v. Roberts*, 1 Vern. Ch. 34; *Simmons v. Oates*, 56 Ga. 609; 2 Am. & Eng. Ency. of Law (2d ed.), 460, note 1; Randolph, Comm. Paper, § 795, note 4; Story, Bailments, § 312.

For the respondent there was a brief by *Miller, Noyes, Miller & Wahl*, and oral argument by *B. K. Miller, Jr.* They argued, among other things, that where the court must make the application it will be made to the debt for which the security is most precarious, viz. will favor the creditor. *U. S. v. January*, 7 Cranch, 572; *Alexandria v. Patten*, 4 id. 317; *Jones v. U. S.* 7 How. 681; *U. S. v. Eckford's Ex'rs*, 1 id. 250; *Backhouse v. Patton*, 5 Pet. 160; *Tayloe v. Sandiford*, 7 Wheat. 13; *Field v. Holland*, 6 Cranch, 8; *Nat. Bank v. Mechanics' Nat. Bank*, 94 U. S. 437. Many cases apply the payments to discharge the individual liability and not that upon which there is a surety, in order that the creditor may collect his unpaid debt. *Sanborn v. Stark*, 31 Fed. Rep. 18; *Scheik v. Trustees of Schools*, 24 Ill. App. 369; *Burks v. Albert*, 4 J. J. Marsh. (Ky.), 97; *Blanton v. Rice*, 5 Mon. 253; *White v. Beem*, 80 Ind. 239; *Livermore v. Claridge*, 33 Me. 428; *Hunt v. Brewer*, 68 id. 262; *Poulson v. Collier*, 18 Mo. App. 583; *Ramsour v. Thomas*, 10 Ired. 165; *Moss v. Adams*, 4 Ired. Eq. 42; *Sprinkle v. Martin*, 72 N. C. 92; *Burt v. Butterworth*, 19 R. I. 127; *Jones v. Kilgore*, 2 Rich. Eq. 63. The rule in favor of the creditor prevails in Wisconsin. *Northern Nat. Bank v. Lewis*, 78 Wis. 475; *Stone v. Talbot*, 4 id. 449; *Robbins v. Lincoln*, 12 id. 7, 8. See, also, *Small v. Older*, 57 Iowa, 326; *Mathews v. Switzler*, 46 Mo. 301; *Wilson v. Allen*,

11 Oreg. 154; *Wilson v. Fairhaven Bank,* 7 Allen, 270; *Hanson v. Manley,* 72 Iowa, 48.

Winslow, J.   The appellant's contentions are (1) that he became a surety only for the payment of the joint notes, and that he was discharged because the bank allowed Meyer to withdraw and use one half of the assets of the Globe Trading Company, whose stock was pledged for such notes; (2) that the $41,000 note was taken in payment of the joint notes, and extinguished them; (3) that the judgment upon the $41,000 note was a bar to an action on the joint notes; (4) that, in any event, the $10,000 made upon execution against Meyer should be applied *pro rata* on the joint debt and on the individual debt, and could not be applied by the plaintiff on the individual debt alone; (5) that the proceeds of the 1,200 shares of Globe Trading Company stock should be applied upon the joint debt alone.

1. The main difficulty with the first contention is that *Finck* never became a surety so far as the bank was concerned, but remained a joint principal.   As between him and Meyer, when Meyer assumed, for a consideration, to pay the debt and hold him harmless therefrom, *Finck* became a surety only; but the bank never consented to any change of liability, and received no consideration for such a consent; so it seems perfectly plain that, as between *Finck* and the bank, *Finck* remained a principal.   But it is argued that the evidence shows that the bank, without *Finck's* knowledge, consented that Meyer might sell his half of the assets of the Globe Trading Company and invest them in his business, thus reducing the collaterals pledged for the joint debt by one half, and that by this conduct the bank is prevented from enforcing its claim against *Finck*, especially when it has levied on and sold Meyer's stock of goods, into which the assets had gone.   If *Finck* was still a principal and not a surety, it is difficult to see how any such result could fol-

low even if the bank consented to the conversion of Meyer's half of the assets of the Globe Trading Company; but the cashier of the bank testifies positively that the bank never knew of nor consented to this use of the assets, and the court neither made nor was requested to make any finding on this point. If the appellant desired a specific finding on this contention, he should have requested it. *Barry v. Schmidt,* 57 Wis. 172. There is ample evidence to support a finding that the bank did not consent to the acts of Meyer, and in such case a judgment will not be reversed for failure to make such specific finding. *Williamson v. Neeves,* 94 Wis. 656.

2 and 3. The court found that the $41,000 note of Meyer was taken as collateral only to the joint notes and Meyer's previously executed individual notes. There is some conflict in the evidence on this point, but there was sufficient evidence to sustain the finding, and hence we cannot reverse it. The taking of Meyer's note was certainly not a payment of the debt, because there was no express agreement that it should be a payment. *First Nat. Bank v. Case,* 63 Wis. 504. No reason is perceived why one of two joint debtors may not give his own note as collateral security for the joint indebtedness. *Paine v. Voorhees,* 26 Wis. 522. If the new note was simply collateral, as found by the court, then it is familiar law that the taking of it does not affect any rights of the creditor upon the original debt; nor does the prosecution of the collateral to judgment affect the right of action upon the original debt, at least until satisfaction is obtained. Colebrooke, Collateral Securities, § 109.

4. A more difficult question arises as to whether the bank could apply the $10,000 made upon its execution against Meyer upon Meyer's individual indebtedness, and leave the joint notes unpaid. If this had been a voluntary payment made by Meyer, the bank could, of course, make the appropriation as it chose in default of any appropriation by Meyer; but it is claimed that where money is collected by action

upon two different claims, and the amount realized is insufficient to discharge both claims, there is no opportunity for appropriation by the parties to either claim, but the law applies the proceeds ratably upon both claims. There is much authority in support of this contention. The reason sometimes given for the rule is that it is a payment made, not by the party, but by process of law, and presumably against the will of the party, and that it is not in the power of the debtor to make the appropriation, and that it would be unjust to allow the creditor the power of making it when the debtor has no such power; hence the law, having coerced the payment upon all the claims embraced in the judgment indiscriminately, will apply the payment ratably upon each. The following cases support this doctrine with greater or less directness: *Bridenbecker v. Lowell*, 32 Barb. 9; *Blackstone Bank v. Hill*, 10 Pick. 133; *Merrimack Co. Bank v. Brown*, 12 N. H. 320; *Gage v. Iler*, 5 Sm. & M. 410; *Orleans Co. Nat. Bank v. Moore*, 112 N. Y. 543; *Cowperthwaite v. Sheffield*, 1 Sandf. 416, affirmed 3 N. Y. 243. So it has been held, apparently on the same principle, that where a creditor proves two claims of different character against an insolvent estate, and receives a dividend, the law will apply the dividend to both claims ratably. *Raikes v. Todd*, 8 Adol. & E. 846; *Commercial Bank v. Cunningham*, 24 Pick. 270; *Richardson v. Kidder*, 3 Dem. Sur. 255. There are, however, well-considered cases holding that the creditor may, in the absence of appropriation by the debtor, apply moneys received upon foreclosure of collaterals given by the debtor to secure two or more debts upon the otherwise unsecured debt, on the ground that he is entitled to the benefit of all his securities. *Small v. Older*, 57 Iowa, 326; *Wilson v. Allen*, 11 Oreg. 154; *California Nat. Bank v. Ginty*, 108 Cal. 148; *Mathews v. Switzler*, 46 Mo. 301. See, also, *Wood v. Callaghan*, 61 Mich. 402; *Morrison v. Citizens' Nat. Bank*, 65 N. H. 253. Such was the holding of this court in *Northern Nat. Bank*

*v. Lewis,* 78 Wis. 475, in the case of a chattel mortgage given to secure several notes, part of which were secured and part unsecured, as against indorsers of a part of the notes. It will be noticed that all of the cases in which the doctrine of ratable payment has been applied were cases in which the rights of mere sureties were in question; and the court in those cases seems to have considered their equities as superior to the rights of the creditor to enforce full payment of his debt. In the present case, however, *Finck* was, as to the bank, not a surety, but a principal. He was absolutely liable for the whole debt of $17,000, and we are unable to see that the bank owed him any duty as to application of proceeds of collaterals pledged by his joint principal. The bank held but one security for the payment of the notes of $24,000, namely, the name of Meyer, and two securities for the payment of the $17,000, namely, the names of both Meyer and *Finck;* and it is entitled to payment in full of both claims. It is not seen that there is any equity on the part of *Finck* which entitles him to demand that collaterals taken from Meyer alone should be applied in whole or in part on the joint debt, rather than on Meyer's individual debt. We are not inclined to depart from the rule laid down in the case of *Northern Nat. Bank v. Lewis, supra;* nor can we see any substantial difference between a payment realized upon sale of property on a chattel mortgage given to secure several debts and a payment realized upon execution on a judgment embracing several debts; and we therefore hold that the amount realized by the bank on the execution was rightly applied on the individual notes of Meyer.

5. As to the Globe Trading Company stock, there was no dispute on the trial but that it was pledged for the payment of the joint debt of $17,000, and for that alone. This was testified to by Meyer and *Finck,* and by the cashier of the bank. It having been pledged to secure a specific debt, its proceeds can only be applied to the payment of that debt.

Hence it was error to direct that the proceeds of the sale of half of that stock should be applied in payment of the individual indebtedness of Meyer. It should all be applied upon the joint indebtedness.

*By the Court.*— That part of the judgment providing for the application of the proceeds of sale of 600 shares of Globe Trading Company stock on the individual indebtedness of Meyer is reversed, and the balance of the judgment is affirmed, and the cause remanded with directions to modify the judgment in accordance with this opinion. No costs are to be recovered by either party, except that the fees of the clerk of this court are to be taxed and paid by the respondent.