SWEDISH AMERICAN NATIONAL BANK OF MINNEAPOLIS, Appellant, vs. KOEBERNICK and others, Respondents.

*September 29—October 20, 1908.*

*Bills and notes: Transfer: Indorsement of nonnegotiable note by secretary of corporation: Presumption of authority: Waiver of right to substitute new notes for old ones.*

1. Indorsement by the payee of his name on a nonnegotiable promise to pay, accompanied by delivery of the instrument, constitutes *prima facie* a valid transfer of the chose in action and the debt represented by it, and the purchaser may maintain action thereon.

2. The authority of the secretary of a business corporation to assign notes given to the corporation will be presumed, in the absence of proof to the contrary and notice to the assignee.

3. One who does some positive act which, according to its natural import, is so inconsistent with the enforcement of a right in his favor as to induce a reasonable belief that such right has been dispensed with, will be deemed to have waived it.

4. Where the facts and circumstances relating to the subject are admitted or clearly established, waiver becomes a question of law.

5. Substitution of new notes for those originally given for machin-
.ery, under an agreement made at the time of returning a part
of the machinery to the vendors, is *held* in this case to have
been waived by the conduct of the makers, including their fail-
ure to demand return of the old notes or tender new ones and
the subsequent making of several payments upon one of the old
notes.

, APPEAL from a judgment of the circuit court for St. Croix
county: E. W. HELMS, Circuit Judge. *Reversed as to two
defendants; affirmed as to the other.*

This action is brought on two promissory notes executed
by the defendants to the Kenyon-Rosing Machinery Com-
pany, a corporation, hereinafter called "Machinery Com-
pany," which notes were deposited with the plaintiff as col-
lateral security for the indebtedness due it from such cor-
poration.   In August, 1904, the defendants, or some of
them, purchased from the said Machinery Company a sep-
arator, stacker, and engine, for which they agreed to pay
$3,200.   Notes for the entire purchase price were signed by
all of the defendants and delivered to said Machinery Com-
pany, two of said notes being drawn for $125 each, two for
$738 each, and two for $737 each, such notes falling due at
different dates.   One of the notes for $738 and another for
$737 were delivered to the plaintiff, as above stated.   Early
in September, by agreement of the parties, the engine which
was delivered was returned to the Machinery Company be-
cause it did not comply with the contract of sale, in that it
was a coal burner instead of a wood and straw burner, and
another engine was delivered in its stead which used wood
and straw for fuel.   There was testimony tending to show
that, at the time the exchange of engines was agreed on,
some fault was found with the separator, and that the agent
of the Machinery Company stated that, if it did not work
satisfactorily after the new engine was put in use, it would
be taken back and that the notes given for the outfit would be
surrendered.   Some time after the engine was delivered
fault was found with the separator and the defendants re-

fused to continue using it, claiming that it did not fulfil the terms of the contract under which it was purchased. This claim on the part of the defendants led to other negotiations, which resulted in a new agreement being made between the parties on December 6, 1904, to the effect that the separator and stacker might be returned to the Machinery Company.

There was some dispute in the testimony as to the amount of credit to which defendants should be entitled on account of the return of this part of the outfit. It was claimed on the part of the defendants that at the time the agreement for the return of the separator and stacker was made the Machinery Company through its agent agreed to surrender up and cancel the notes that were then outstanding and that new notes should be executed in lieu thereof for the purchase price of the engine. The plaintiff contended that the agreement between the parties was to the effect that the two notes aggregating $250 should be surrendered and that proportionate indorsements should be made on the remaining notes for the balance of the credit to which the defendants were entitled on account of the return of the property as stated. The notes in question were delivered to the plaintiff before the agreement in reference to the exchange of engines or the agreement in reference to the taking back of the separator and stacker was made. The defendants had no notice of the alleged transfer of the notes, but such notes are admittedly nonnegotiable.

The jury found that the Machinery Company promised to surrender and cancel the notes originally given, and on the verdict so rendered the court entered judgment dismissing the complaint. Errors are assigned because of the failure of the court to direct a verdict for the plaintiff; because of the refusal of the court to change the answers to certain questions in the special verdict; because of the refusal of the court to render judgment for the plaintiff notwithstanding the verdict; and because of rulings on evidence.

For the appellant there was a brief by *John Lind &*

*A. Ueland* and *Varnum & Anderson,* and oral argument by *Mr. Ueland.*

For the respondents there was a brief by *Baker & Haven,* and oral argument by *Spencer Haven.*

BARNES, J.    We are met at the threshold of this case with the contention on the part of the defendants that no such transfer of the instruments sued on was made as would entitle the plaintiff to maintain an action thereon, and that therefore the judgment must be affirmed regardless of any errors committed in the trial of the cause.    In support of such contention it is urged (1) that an indorsement in blank by the payee of a nonnegotiable note, accompanied by delivery, does not transfer title to the note nor to the debt evidenced by it; (2) that the indorsement on the back of the notes, "Kenyon-Rosing Machinery Company by O. G. Rosing, Secretary," was not shown to be the act of the corporation, no proof of authority to make the indorsement on the part of the secretary having been offered.

An indorsement by the payee of his name on the back of a nonnegotiable promise to pay, accompanied by delivery of the instrument, constitutes *prima facie* a valid transfer of the chose in action and the debt represented by it, and the purchaser may maintain action thereon.    *Alexander v. Oneida Co.* 76 Wis. 56, 45 N. W. 21.    Neither was it incumbent upon the plaintiff to prove that the secretary of the Machinery Company was authorized by the corporation to assign the notes.    In *Milwaukee T. Co. v. Van Valkenburgh,* 132 Wis. 638, 645, 112 N. W. 1083, this court held that the president of a business corporation "is a usual officer as managing agent to execute such a paper as the one in question [an assignment of the note and mortgage], and it is implied in case of a transfer so signed that the officer had authority to act in the matter in the absence of proof to the contrary and notice to the person receiving the paper."    What is

there said is just as applicable to the secretary of a business corporation as it is to its president. Both are general officers of such corporations who often perform interchangeably a wide range of duties. Indeed, it is a matter of common knowledge that the presidents and secretaries of ordinary private corporations perform much the same functions in the conduct of corporate business enterprises that are performed by general partners in a copartnership business. It follows that the trial court was right in holding that plaintiff had sufficient title to the notes in suit to enable it to sue and recover thereon.

There is one question involved in this case that seems to be so decisive of it as to render unnecessary the consideration in detail of the various errors relied on for reversal. The notes given by the defendants were evidence of the debt owed by them to plaintiff for the outfit originally furnished, and also for the outfit as it stood after the second engine was substituted for the one first delivered. This situation continued down to December 6, 1904, when a new agreement was reached, by which a part of the outfit was taken back and credit on account thereof was to be given to the defendants. The amount of this credit extinguished a part of the indebtedness represented by the notes. The portion of the indebtedness incurred on account of the engine which was represented therein was not canceled or wiped out in any way. It would seem to be immaterial, as far as the parties are concerned, whether proper credit should be indorsed on the old notes or they should be surrendered and new ones given for the balance due or to become due. The facts testified to in reference to the substitution of new notes for the old ones are very unsatisfactory, uncertain, and indefinite, and it is difficult to spell any contract out of them; but if any could be spelled out, which we do not decide, it must be by assuming that the parties, by implication, agreed that new notes signed by all the defendants should be given for the

reduced amount, such notes to fall due at the same time and draw the same rate of interest provided in the notes first given. The testimony showed that, after making this alleged agreement to exchange new notes for the old ones, the defendants never made any demand for the return of the old notes, and never made any offer or tender of new notes in their stead. About three weeks after the alleged agreement was arrived at, a payment of $15 was made by defendants and applied on one of the old notes. About a week later another payment of $60 was made and applied in the same way. Another payment of $25 was made on May 1, 1905, and one of $20 on September 28, 1905, and another of $80 on November 27, 1905, and still another payment of $100 was made on January 10, 1906. All of these payments were applied on one of the original notes. Under date of November 15, 1905, one of the defendants wrote the Machinery Company that they would finish the season's run soon and would collect their threshing bills and settle with the Machinery Company for the season. On December 8, 1905, one of the defendants, replying to a letter asking for a payment so as to save the trouble and expense of sending an agent to see the defendants, answered that it was their aim to send what money they could so as to save expense to the Machinery Company, and that they would send $50 the latter part of the following week. December 25, 1905, a letter was sent to the Machinery Company, which was signed *"Emil Koebernick, by Carl Koebernick,"* which, among other things, stated:

"What was due to pay on the engine on last year's note we will pay this fall as agreed with your Mr. Johnson. Please send the engine note of last year to Clear Lake, and I will call there and settle for it."

On December 27, 1905, a letter was written to the defendant *Emil* by the Aultman Engine & Thresher Company, the holder of one of the original notes, stating definitely and ex-

plicitly the terms of the agreement of December 6, 1904, as claimed by the agent of the Machinery Company. It is true this letter was excluded from evidence, but it is none the less true that it was entirely competent in view of what subsequently took place. Within less than two weeks after this letter would be received in the ordinary course of mail, fully advising the defendants as to the amount claimed to be due on their outstanding notes on account of the engine, the defendants made their last payment of $100. In an action brought by the Aultman Engine & Thresher Company against the defendants on the note upon which the foregoing payments were made, the defendants *Carl* and *Augusta* answered, setting up the fact that they signed the note merely as sureties and that they were discharged by reason of the time of payment of the note having been extended without their consent. No claim was asserted that liability on the note in suit was avoided by reason of an agreement to substitute another note in its stead.

When it is considered that the parties could not have attached much importance to the mere formal matter of the giving of new notes, rather than making indorsements on ones then in existence, so that the old ones stood for just what the new ones would represent, we cannot escape the conclusion that the defendants abandoned and waived the substitution of new notes for the old ones, assuming the agreement to have been as found by the jury.

A waiver is the intentional relinquishment of a known right. *Monroe W. W. Co. v. Monroe,* 110 Wis. 11, 22, 85 N. W. 685. A waiver may be shown by a course of conduct signifying a purpose not to stand on a right, and leading, by a reasonable inference, to the conclusion that the right in question will not be insisted upon. And a person who does some positive act which, according to its natural import, is so inconsistent with the enforcement of the right in his favor as to induce a reasonable belief that such right has been dis-

pensed with, will be deemed to have waived it.    29 Am. &
Eng. Ency. of Law (2d ed.) 1103, and cases cited.    And,
where the facts and circumstances relating to the subject are
admitted or clearly established, waiver becomes a question of
law.    *Fraser v. Ætna L. Ins. Co.* 114 Wis. 510, 523, 524,
90 N. W. 476; *Fox v. Harding,* 7 Cush. 516, 520.

From the conclusion reached it would logically follow that
the judgment should be reversed and the cause remanded
with direction to enter judgment on the notes for a stated
sum, were it not for an apparent dispute in testimony as to
the amount of credit defendants should receive on account
of the separator and stacker.    The great preponderance of the
testimony is to the effect that such allowance should be $1,150,
the price at which these articles were figured in the original
purchase, and appellant's counsel seem to concede in their
brief that credit to this amount should be given.    The agent
of the Machinery Company, however, testified that he did
not agree to allow this amount, and as a matter of fact it was
not allowed by way of payment of or indorsement on the
notes.    There is no dispute about two notes for $125 each,
dated August 24, 1904, having been surrendered and can-
celed at the time the agreement of December 6th was made.
One of these notes fell due October 1, 1904, and the other
would mature October 1, 1905.    These notes apparently
drew interest at seven per cent. per annum until maturity
and ten per cent. thereafter, although this fact appears by
inference rather than by any direct testimony bearing on the
subject.    The evidence as to the amount due on these notes
December 6, 1904, is too unsatisfactory to warrant this court
in endeavoring to compute the portion of the $1,150 credit
that was absorbed by them, even if it were apparent that the
total credit should be that amount.    One half the balance of
the credit left after paying the two $125 notes should be ap-
plied upon the notes in suit as of December 6, 1904.    If the
sum of $1,150 is the proper credit, it is a mere matter of

computation to make the proper indorsement on the notes in suit after the conditions as to interest on the two $125 notes are ascertained.

*By the Court.*—Judgment reversed as to the defendants *Emil Koebernick* and *Carl Koebernick,* and the cause is remanded for a new trial upon the question of the amount that should be credited the defendants on the notes in suit on account of the contract of December 6, 1904. The plaintiff may, within thirty days from the date of the filing of the mandate of this court with the clerk of the circuit court for St. Croix county, elect to take judgment against the defendants *Carl Koebernick* and *Emil Koebernick* for the amount due on said notes after crediting thereon the amounts to which said defendants would be entitled to credit as of December 6, 1904, on the basis of an allowance of $1,150 for the machinery returned. The judgment as to *Augusta Koebernick* is affirmed. Costs in this court are awarded to appellant.