ZWIETUSCH, Administratrix, and others, Respondents, vs. LUEHRING and others, Appellants.

*November 20, 1913—February 24, 1914.*

*Receivers: Judicial sale of leasehold interest: Obligations assumed by purchaser: Statute of frauds: Purchase by one for benefit of others: Landlord and tenant: Assignment of lease: Liability of assignee: Consent of lessor: Surrender and re-entry: Giving option to purchase: Actions: Election of remedies: Estoppel: Waiver: Evidence: Competency: Witnesses: Transactions with persons since deceased: Parol evidence to explain judicial order: Appeal: Error must affirmatively appear.*

1. An order for the sale by a receiver of the interest of an insolvent corporation in a lease of an amusement park provided that upon the sale being made and confirmed the purchaser should execute a contract assuming the obligations of the lease and agreeing to pay the rent reserved therein; the notice of sale stated that the "interest and liability as lessee" of such corporation would be sold; and the receiver's report of sale and the order of confirmation recited that the sale had been made in conformity to the order of sale. *Held,* that the purchaser

at the sale, being chargeable through his attorneys, if not personally, with knowledge of the contents of such order and notice of sale, was liable for the rent thereafter accruing on the lease, he having taken possession of the premises and assigned the lease to a corporation, although he did not execute any contract assuming the obligation of the lease and neither the report of sale nor the order of confirmation made any specific reference to such condition or requirement.

2. The fact that the receiver's report of sale stated that he had executed a deed to the purchaser before confirmation, which was contrary to the order of sale, and that such report was confirmed, would not relieve such purchaser from the liability assumed when he made the purchase; nor could the purchaser escape the burdens then assumed by obtaining possession of the deed and then refusing to enter into a contract as directed by the order of sale. The statute of frauds has no application to such a situation.

3. Although a lease in terms requires the lessor's consent to an assignment thereof, such consent is not required where the assignment is by operation of law, as in the case of a judicial sale.

4. Where a lease provided that an assignment should not release the party assigning, though consented to by the lessor, but that in such case both assignor and assignee should be liable, a statement by the lessor, at a receiver's sale of the leasehold interest, that he had no objection to the sale but would do nothing to jeopardize his claim against the stockholders of the corporation whose assets were being sold, could not be construed as a refusal to consent to the transfer.

5. The lessor having been given no opportunity to accept the written obligation of the purchaser, a mere statement by him after the sale that he would be a fool to take such obligation when he had an opinion from his attorney that wealthy men, stockholders in said corporation, were liable to him, would not amount to a refusal to assent to the transfer, especially when made in ignorance of the fact that the men referred to were among the real purchasers.

6. The remedy, if any, against stockholders of the insolvent lessee was not inconsistent with holding the subsequent assignees or purchasers of the lease for the rent; hence there was no election by the lessor between inconsistent remedies.

7. Where by the terms of a receiver's sale of corporate property, including a leasehold interest in land, the purchaser was required to assume the obligations of the lease, and one stock-

holder, pursuant to a reorganization agreement, purchased the property for the benefit of himself and other stockholders, all of such associates became bound by the obligation assumed.

8. A change of position by one person in reliance upon the conduct of another is essential to an estoppel *in pais*.

9. Waiver is the intentional relinquishment of a known right, benefit, or advantage.

10. Where the facts and circumstances relating to the subject are admitted or clearly established, waiver becomes a question of law, but if different inferences may be drawn from the evidence a question of fact is presented.

11. Acts of the lessors of property, after a receiver's sale of the lease, nominally to an individual purchaser who in fact represented responsible associates, evincing an unwillingness to recognize such nominal purchaser as tenant, all of which acts were done in ignorance of their claim against such associates, do not amount to a waiver of such claim.

12. In an action to charge the real purchasers of a leasehold with the rent reserved in the lease, the legal proceedings in which the sale was ordered, the agreement between the nominal purchaser and the other defendants, and their organization of a corporation to take over the lease, were all competent evidence.

13. In an action by heirs of a lessor to recover rent from alleged assignees of the lease, a defendant who took the assignment in his own name though in fact for the benefit of himself and his codefendants, all of whom were stockholders in a corporation which they sought thereby to reorganize, and who, in turn, transferred the same to a new corporation organized by them,— was incompetent under sec. 4069, Stats., to testify to a conversation with the deceased lessor, although he claimed to hold his stock merely as agent of a lumber company of which he was a stockholder and officer.

14. In such action, statements made by the attorney of the deceased lessor to one of the defendants in the presence of the lessor, would be immaterial unless concurred in by the client, and if concurred in that fact could not be shown by such defendant.

15. Under sec. 3072m, Stats., error to justify reversal must affirmatively appear to have been prejudicial to the appellant, and this does not appear from the exclusion of evidence, when the court is not advised what was intended to be shown by the witness nor how it would affect the rights of the parties.

16. An order of court cannot be explained by evidence of a conversation between an attorney of one of the parties and the presiding judge.

17. Where the assignee of a lease became insolvent and failed to pay the rent, the leasing of the premises by the lessors to a third person at a reduced rental before the expiration of the term, under an agreement with the assignors that it should not "prejudice or affect in any way the rights or claims of the lessors against any of the parties liable upon or under the original lease" if any liability existed thereunder, did not amount to a surrender of the lease or a re-entry of the lessors and did not release the parties so liable, but they were entitled to credit for the rent received.

18. An option to purchase the leased premises given by the lessor to a third person, without any mention of the lease, which option was never accepted and never became a binding contract, did not constitute a re-entry so as to relieve the lessee from the payment of rent.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

This action was brought to recover rent alleged to have accrued from and after August 14, 1908, to the amount of $9,000. A verdict was directed for the plaintiffs, and from a judgment entered thereon defendants appeal.

The lease was made between plaintiffs' predecessors in title and one Richard C. Kann, on November 15, 1904, for a period of ten years, at an annual rental of $4,000. The lease provided that the lessee might assign it, provided the assignee should at the time of the assignment execute and deliver to the lessor a written instrument agreeing to pay the rent reserved in the lease and to perform all the conditions, covenants, and agreements thereof. It further provided that such assignment should not release the lessee, but that he should remain personally liable in the event of an assignment. It also recited that any subsequent assignment should be made only on the same terms and subject to the same conditions as were provided for in reference to the first assignment. It further provided that the leased premises should be used for an amusement park, and that the lessee should expend in buildings and improvements thereon the sum of $75,000 be-

fore opening it to the public. The lessee was given ninety days after the expiration of the term in which to remove the improvements placed thereon, but it was provided that in case there was any default in the payment of the rent or taxes agreed to be paid, or a failure to otherwise comply with the terms of the lease, the lessor might enter upon the premises and sell the improvements thereon and apply the proceeds to the payment of the amount due the lessor, the overplus, if any, to be paid to the lessee. The covenants and conditions of the lease were made binding on the parties, their legal representatives and assigns, but such provision was not to be construed as permitting an assignment of the lease or a subletting of the premises, except in the manner provided for in the lease.

On December 6, 1904, the lease was assigned by Kann to the International Construction Company, a corporation which was organized for the purpose of operating an amusement park on the leased premises. This corporation agreed with Kann to assume all of the obligations imposed on him by the lease and entered into possession of the premises and remained in possession thereof until about November, 1907. All of the defendants in this action, except *Luehring*, were stockholders in the corporation. Bonds to the extent of $100,000 were issued by the corporation and were largely subscribed for by its stockholders. In the fall of 1907 the company was financially embarrassed and its stockholders held a series of meetings to devise means for financing the enterprise. These meetings, or some of them, were attended by Oscar B. Zwietusch, who was then a stockholder in the corporation. He was also one of the lessors, having, with his brother *Edward O.*, inherited the leased premises from his father, who died in 1903. It was finally decided to make an assessment against the stockholders of an amount sufficient to pay debts and to place the corporation in a position where it could continue the amusement business during the year

1908, and a written agreement was entered into whereby the stockholders agreed to ratably contribute the necessary funds, the amount of the assessment being limited to fifty per cent. of the face value of the stock held. The agreement recited that it was necessary to reorganize the corporation and a plan of reorganization was outlined. In brief, it was proposed to issue paid-up stock in the corporation to be formed to the amount of the bonds held by the stockholders in the existing corporation and also to the amount advanced on the assessment to take care of present and future obligations. *George F. Luehring* was named as trustee to collect the assessment and to settle and compromise the outstanding claims. He also signed the contract, representing that he was the holder of ten shares of stock in the company. It seems, however, that this stock was in fact owned by the Hilty Lumber Company, of which he was secretary. *Luehring* collected $12,000 or $13,000, with which he settled with substantially all of the creditors. In the meantime one Scholl commenced an action against the corporation and recovered a judgment, of which a transcript was filed in the circuit court, and sequestration proceedings were brought in behalf of the plaintiff. The defendants, excepting Kann, procured an assignment of this judgment, and had their own attorney substituted for the attorneys who represented the plaintiff, and the defendants then apparently proceeded to conduct the reorganization proceedings through the receivership. It was decided by the stock and bond holders to sell the property of the corporation and that *Luehring* should buy it in for the signers of the agreement. On petition the court ordered a sale to be made, and it was made to *Luehring* and confirmed by the court. This sale specifically covered the leasehold interest of the corporation in the premises.

Among other things, the order of the court directing the sale of the property of the International Construction Company directed that all of the property of said corporation be

sold, including "its interest as lessee in the property de-
scribed in said lease upon which said Wonderland Amuse-
ment Park . . . is situated, and convey the same to the pur-
chaser or purchasers free of all liens and incumbrances
thereon, . . . excepting the lien of said lease under which
the defendant company holds possession of the premises upon
which its said amusement park is located, upon confirmation
of said sale by this court and upon said purchaser executing
an agreement with the receiver herein, to be ratified and con-
firmed by this court, binding such purchaser to assume and
pay the rent for said amusement park due and to become
due and to assume all the obligations of said lease in accord-
ance with its terms, conditions, and limitations, together with
an acceptance of said undertaking or agreement by the les-
sors of said premises."

This order was dated February 6, 1909.  The provision
therein requiring the purchaser of the leasehold interest to
enter into an agreement to assume and pay the rent and all
the obligations of the lease was inserted at the instigation of
the attorney who then represented the lessors.  The property
was sold to the defendant *Luehring* on February 20th, for his
benefit and the benefit of his codefendants, for the sum of
$500.  The notice of sale recited that the "interest and lia-
bility" of the corporation in the lease would be sold.

On February 21st the receiver made his report, reciting
the sale and the fact that he had conveyed all of the property
of the corporation to the defendant *Luehring* "free of all
liens and incumbrances thereon . . . excepting the lien of
said lease under which the defendant company holds posses-
sion of the premises upon which its said amusement park is
located."  The report specifically recited that the interest of
the corporation in the lease had been sold.

On the same day an order was entered confirming the
sale, which also recited that all of the property of the cor-
poration was sold to the defendant *Luehring* "free and clear

of all liens and incumbrances thereon, . . . excepting only the lien created by the terms and conditions of the lease." It further recited that the sale had been made in conformity with the terms and conditions of the order of sale.

The receiver's report did not recite that the leasehold interest had been sold subject to the condition that the purchaser should execute an agreement with the lessor binding such purchaser to assume and pay the rent due and to become due and to assume other obligations of the lease. Neither did the order of confirmation contain any such requirement. The order of confirmation was made *ex parte* and was not submitted to the lessors' attorneys.

Oscar B. Zwietusch appeared at the sale and stated that he did not want to interpose any objection to it, but wanted it understood that the lease was a prior lien on all the buildings in the park and that such buildings were part of the park itself, a part of the real estate, and that the lessors held a lien thereon, and that whoever bought the property would buy it subject to that lien, and that they would not let any one into possession that would hurt "our claim in any way that we hold against the International Construction Company and the stockholders."

Oscar B. Zwietusch died in July, 1910. Mr. Durant, the attorney for the defendants, testified that Zwietusch took the position that the lessors had a valid enforceable claim against the stockholders of the International Construction Company for the rent stipulated in the lease, and that the lessor would do no act or make no contract that would tend to weaken such claim. This contention on the part of Mr. Zwietusch was apparently based on the fact that the stock in the corporation had been illegally issued and that because of such illegal issue there was a personal liability on the part of the stockholders to the lessors.

Mr. Durant further testified that Mr. Zwietusch refused to accept an agreement from *Mr. Luehring* to be bound by

the lease, and that it was for this reason that the order of confirmation did not follow the order of sale by directing the execution of such agreement. This evidence was stricken out.

The receiver executed to *Luehring* a bill of sale conveying the property of the International 'Construction Company, and also executed an assignment of the lease to said *Luehring*. This assignment was not produced at the time of the trial, but the parol testimony was to the effect that there was no provision therein that the assignee should assume the terms and conditions of the lease or be bound thereby.

The reason given by Mr. Zwietusch for refusing to enter into an agreement with *Mr. Luehring,* as testified to by Mr. Durant, was that it would be foolish for him to do so when he had the opinion of his attorney, Mr. Hoyt, that *Washington Becker, George P. Mayer,* and other wealthy men were liable for the rent because they were stockholders in the International Construction Company.

The Wonderland Amusement Company was organized as a corporation in February, 1908, and on the 29th of that month *Luehring* conveyed to said corporation all of the property purchased at the receiver's sale. The defendants in the present action, except Kann and possibly *Luehring,* were stockholders in said company. This corporation went into possession of the leased premises at once and remained in possession thereof until the fall of 1908. On March 1st the defendant *Luehring* paid the sum of $500 on rent which became due the preceding 15th of February. The receipt given for this rent recited that the money was received from the International Construction Company by the hands of *George Luehring.*

On May 26, 1908, the Wonderland Amusement Company gave its check for $600 to apply on rent, and on June 2d its check for $400 to apply on rent. The Wonderland Amusement Company continued in possession of the property until September, 1908, when it became insolvent and made a vol-

untary assignment to the defendant *Naumann.* The corporation paid no more rent and made no further effort to use the premises, and they were not used until the summer of 1910, when the park was used as an amusement resort by three persons who leased the same from the predecessors in title of the plaintiffs on November 15, 1909. Before this lease was entered into, an agreement was made between the lessors and the shareholders in the International Construction Company whereby the latter consented to release all liens on the property covered by the lease of 1904, and agreed that the lessors might lease the property to third parties from time to time at an annual rental of not less than $2,000, without prejudice to the rights or claims of the lessors against any persons liable upon or under the original lease, if any such liability existed, provided that there should be credited on the rent reserved in the original lease, $2,000 per year. This agreement was signed by the stockholders of the International Construction Company and by all of the defendants or their agents, excepting the original lessee, Kann.

During the pendency of the voluntary assignment proceedings it was suggested to the lessors that they file a claim for rental against the corporation. They refused to do so, assigning as a reason that such claim might be construed as a waiver of the claim against the stockholders of the International Construction Company, or might interfere with the lessors' right to hold the stockholders of that company personally liable on the lease.

In this proceeding the lessors filed a verified statement admitting the appointment of a receiver for the International Construction Company, and that such receiver was authorized to sell the property of the corporation and did so to the defendant *Luehring;* that said *Luehring* did not enter into an agreement approved by the court with the lessors to assume and agree to pay the rent provided in the lease and to perform all the conditions and covenants thereof; that the lessors

did not consent to any assignment or transfer by the receiver to said *Luehring* of the lease, or of any right, title, or interest in and to the buildings and structures upon the premises.

On January 17, 1911, the plaintiffs gave an option to the city of Milwaukee for ninety days to purchase the leased property. Such option contained no reference to the lease. A form of contract which the lessors proposed to execute was submitted to the city, and such contract contained no reference to the lease, and recited that when the conditions of the contract were fulfilled the lessors would give a good and sufficient warranty deed of the premises free and clear of all legal liens and incumbrances.

On September 13, 1912, the city of Milwaukee was again requested by letter to buy the property, which letter contained no reference to the lease, and on October 31st another letter was written, apparently in behalf of the lessors, to the Park Board of the city of Milwaukee offering the premises, in which no reference was made to the lease.

The defendant Kann does not seem to have appeared or answered in the action. At the close of the evidence both parties moved for a directed verdict. The court granted the plaintiffs' motion and judgment was entered in favor of the plaintiffs and against all of the defendants except Kann for $9,977.31 damages and costs. Defendants appeal from this judgment.

For the appellants *George F. Luehring, Richard C. Kann, F. R. Bacon, F. C. Pierce, F. J. Kipp, George P. Mayer, F. J. Mayer, A. J. Mayer, H. Naumann, Washington Becker, T. J. Pringle,* and *G. H. Norris* there was a brief by *Paul D. Durant* and *Flanders, Bottum, Fawsett & Bottum,* and oral argument by *Mr. Durant* and *Mr. J. G. Flanders.*

*Robert P. Perry,* for the appellant *John McCoy.*

*Carl B. Rix,* for the appellant *Otto Streissguth.*

*Edgar L. Wood,* attorney, and *Frank M. Hoyt,* of counsel, for the respondents.

The following opinion was filed December 9, 1913:

BARNES, J.    The appellants insist that the judgment is er-
roneous for the following reasons: (1) No liability upon the
covenants of the lease was ever imposed on the defendants.
(2) If any such liability was imposed, it ceased when the
lease was assigned to the Wonderland Amusement Company.
(3) The lessors exercised their choice between two incon-
sistent remedies, by electing to hold only the International
Construction Company and its stockholders.    (4) The lessors
by their acts and conduct have estopped themselves from
claiming any liability against the defendants.    (5) By their
acts and declarations the lessors have waived any claim
against the defendants.    (6) This action is a collateral at-
tack on a final order of the court in the receivership proceed-
ings, and therefore cannot be maintained.    (7) The court
erred in receiving certain testimony.    (8) The court erred in
rejecting certain evidence offered.    (9) The court should
have submitted to the jury the questions: (a) Did defendants
surrender possession of the premises to plaintiffs, and, if so,
when?    (b) Was there a re-entry by the plaintiffs, and the
date thereof?

No claim is made that there was any other jury question in
the case.

1, 2, and 6. The first, second, and sixth questions will be
treated together.    The order directing the receiver to sell the
leasehold interest and other property of the International Con-
struction Company provided in substance that upon the sale
being made and confirmed the purchaser should execute a con-
tract assuming the obligations of the lease and agreeing to pay
the rent reserved therein.    The provision was inserted in the
order because the lessors' attorneys insisted that it should be.
The notice of sale recited that the *"interest and liability as
lessee"* of the Construction Company would be sold.    The
plan of certain stockholders of the Construction Company

was that its property should be sold to one of their members and a new corporation organized to take over the property and carry on the business. All of the defendants except Kann were parties to this agreement. The receivership proceedings were carried on by the attorney for these parties. Presumably he drew the order of sale and the notice of sale. In any event he knew their contents, and the clients whom he represented were chargeable with like knowledge. It fairly appears from the evidence that the notice of sale was read before the property was offered. It is perfectly obvious that the lease, coupled with the liability of the International Construction Company thereunder, was what was offered for sale and what *Luehring* actually purchased. It is conceded that the Construction Company was liable for the rent reserved in the lease for the period covered by it. The order of confirmation recites that the proceedings of the receiver had been carefully examined, and that the court after such examination was satisfied that the sale "had in all respects been made in conformity with its order made herein February 6, 1908," being the order of sale. The receiver's report of sale which was confirmed recited that it had conveyed the property sold free and clear of all incumbrances, excepting the lien of the lease under which the corporation held possession, *"as directed in the order of sale."* *Luehring* took possession of the property and in a few days conveyed the same to the new corporation (the Wonderland Amusement Company), and presumably stock was issued to the signers of the agreement referred to in the manner provided for, although *Luehring* testified that he was not a stockholder. He in any event was elected secretary and treasurer of the new corporation. This corporation then went into possession of the property and remained in possession until the fall of 1908, when it became insolvent. How did *Luehring* and his associates escape the liability which he and they unquestionably as-

sumed when the purchase was made? Not by virtue of the order of confirmation, because that order confirms the sale made, after reciting that it was made in conformity with the order of sale. There is no conflict in the two orders in this regard. The agreement provided for by the order of sale was not to be executed before the sale was confirmed. There was no necessity for repeating in the order of confirmation the requirements of the order of sale. This order stood until it was modified by some subsequent order, and all that can be claimed here is that the order of confirmation is silent as to a positive requirement of the order of sale. If it had been shown that the receiver ignored the order of sale and sold the property on conditions other than those required by the order, a different question would be presented. But such is not the fact. It is true the receiver reported the giving of a deed of the property before confirmation, and that this act was contrary to the order of sale and was confirmed by the court. But we think it is just as true that the confirmation order did not relieve the purchaser at the sale from assuming the obligations in regard to rent which he undertook to assume when he made his purchase. The order of confirmation carefully refrains from reciting that the premature giving of the deed was in conformity with the order of sale. The fact that the purchaser got the deed into his possession before he executed the contract provided for could not operate to relieve him from the performance of that duty or the assumption of the obligation thereof. And where he went into possession of the property and took the benefits of the sale, he could not escape the burdens assumed when the purchase was made, by refusing to do the things which he ought to have done and which he was bound to do. There was a legal duty imposed by the order to assume the rent and to agree in writing to do so. He could not escape the obligation to pay which was imposed by refusing to undertake it in writing, and at the same

time avail himself of all the advantages acquired by the purchase. The statute of frauds has no application to this situation.

But it is argued that the lessors refused to consent to the sale or transfer of the lease to *Luehring* and refused to recognize the validity of such transfer, and therefore the obligation to assume liability for the rent did not become effective.

There are two answers to this contention. In the first place it was not essential that the lessors should give such assent, and in the second place the evidence fails to show that they withheld it.

By its terms this lease was not assignable without the consent of the lessors in writing, and this no doubt was the reason why the order of sale provided for consent on the part of the lessors. But, notwithstanding this provision in the lease, it was assignable by operation of law whether the lessors gave their consent or not. See 18 Am. & Eng. Ency. of Law (2d ed.) 661, where many of the cases so holding are collected.

If the lessors thought they could prevent the purchaser at the sale from taking the benefit of his purchase by refusing assent thereto, they were simply mistaken as to what their legal rights were. If the purchaser desired to avail himself of such benefit it was his duty to do the things which he was required to do, regardless of the attitude of the other party, and so long as he did them his rights would be protected regardless of the position taken by the lessors. The law settled the rights and obligations of the parties, and protests on the part of either party would not be of much avail. The lessors might protest against the validity of the assignment, but so long as the assignees took possession of and used what they bought, such protestations did not change the legal status of the parties.

In the next place, we hardly think that there was more than a mere scintilla of evidence to show that the lessors would re-

fuse to approve of the agreement provided for in the order of sale, and it is certain that they were not given any opportunity to do so and that the purchaser did not propose to run the risk of giving any such opportunity so long as he got the benefit of his purchase and could avoid doing so.

It is undisputed that the lessors were in consultation with an able attorney and that it was at his suggestion that the order of sale was so worded that the purchaser thereat would become bound by the covenants of the lease. One of the lessors appeared at the sale and stated in substance that he had no objection thereto, but would do nothing that would jeopardize a claim they were making against the stockholders of the International Construction Company. It has not been suggested that such consent could affect such claim, and we fail to see how it could. The persons who would become liable beyond any question for future rent, if the agreement provided for in the order of sale was carried out, were the very persons whom Zwietusch desired to hold on their stockholders' liability because they were solvent and able to pay, although the evidence does not show that Zwietusch was aware that any one except *Luehring* would be liable. There was every reason why the lessors should, after they had time to ascertain what their legal rights were, consent to the transfer by the receiver which was so manifestly to their advantage, and no conceivable reason why they should not, or why they should reject the provisions inserted in the order of sale for their benefit and because their attorneys insisted on it. Mr. Zwietusch died before this action was commenced, and we have no line on his mental caliber, further than that the lease was carefully prepared to conserve and protect the rights of the lessors and that they employed attorneys to advise them when the Construction Company stranded. Now the only evidence tending to show that the lessors would not assent to a contract such as that provided for in the order of sale is that given by Mr. Durant, in which he undertook to detail some conversa-

tions had with Zwietusch after the sale took place.    The substance of these conversations as summed up by Mr. Durant was that Zwietusch had no objection to the sale so long as he did nothing to waive his claim against the stockholders of the International Construction Company.    This certainly was not a declination to assent to the contract provided for when it was tendered for approval.    It was also testified by Mr. Durant that Zwietusch said that he (Durant) must think him a fool if he would accept an agreement from *Luehring* to be bound by the sale of the lease, as he had an opinion from his attorney that *George P. Mayer* and *Washington Becker* and other wealthy men were liable for the rent.    If this statement was made, it was of course made in ignorance of the fact that *Luehring* made the purchase for himself and these same men who would be bound equally with him for the performance of the agreement, and it must also have been made under the unfounded belief that the acceptance of the agreement might waive an existing claim for rent.    The lease very carefully provided that the lessee and each assignee should be liable for all rent reserved therein.    There was no advance refusal to assent to the transfer of the lease to the defendants, and defendants carefully refrained from giving the opportunity to consent.

It is not claimed that *Luehring's* codefendants, except Kann, were not bound under their contract with him for the obligations which he assumed in purchasing the lease.    It is clear that they were.    *Kirschbon v. Bonzel,* 67 Wis. 178, 29 N. W. 907; *Woolsey v. Henke,* 125 Wis. 134, 103 N. W. 267; *Hodges v. Nalty,* 104 Wis. 464, 80 N. W. 726; *Northern Nat. Bank v. Lewis,* 78 Wis. 475, 47 N. W. 834.

We think that *Luehring* and his associates became obligated to perform the covenants of the lease under the transfer to them, by operation of law.    Such being the case, the subsequent assignment of it to the Wonderland Amusement Company did not relieve them of the obligation to pay rent accru-

ing after the assignment was made, unless the lessors in some way lost the right which accrued to them upon the assignment being made to *Luehring*.   This question has been discussed at considerable length because it was the one argued at greatest length at the bar and because the case is an important one. The foregoing view renders it unnecessary to decide whether in any event, where there is a transfer of such a lease as is here involved by operation of law, the purchaser does not assume the covenants of the lease.

Construing the order of confirmation as we do, there is no merit in the contention that this action is a collateral attack on a final order of the court.

3. There was no election between inconsistent remedies by the lessors.   The remedy against the stockholders of the Construction Company was not inconsistent with holding subsequent assignees or purchasers of the lease.   Every transfer made in the manner provided for by the lease furnished added security for the rent still to become due, and released none of those already liable.

4. Neither was there any estoppel *in pais*.   The record fails to show that the lessors ever did any act or thing which misled the defendants or induced them to do anything to their disadvantage which they would not otherwise have done.   A change of position by one in reliance upon the conduct of another is essential to create an estoppel *in pais*.   *Somers v. Germania Nat. Bank,* 152 Wis. 210, 219, 138 N. W. 713; *Ady v. Barnett,* 142 Wis. 18, 23, 124 N. W. 1061; *Mabie v. Matteson,* 17 Wis. 1, 12; *Norton v. Kearney,* 10 Wis. 443; *Chynoweth v. Tenney,* 10 Wis. 397; *Racine Co. Bank v. Lathrop,* 12 Wis. 466.

5. The question of waiver is perhaps the one on which the most stress was laid, aside from that first discussed.   It is about as difficult to lay down any hard-and-fast rule as to what constitutes waiver as it is in reference to what constitutes negligence.   We have definitions of both terms, but it is often

hard to determine what cases fall within the definition and what without. Each case must be decided on the facts peculiar to it. Waiver is the intentional relinquishment of a known right, benefit, or advantage. *Swedish Am. Nat. Bank v. Koebernick,* 136 Wis. 473, 479, 480, 117 N. W. 1020, and cases cited; *Voss v. Northwestern Nat. L. Ins. Co.* 137 Wis. 492, 118 N. W. 212; *Pabst B. Co. v. Milwaukee,* 126 Wis. 110, 105 N. W. 563; *Fraser v. Ætna L. Ins. Co.* 114 Wis. 510, 523, 90 N. W. 476. There is no dispute about the facts which it is claimed constitute the waiver, and counsel on both sides insist that the evidence did not present a jury question. It is said in *Swedish Am. Nat. Bank v. Koebernick,* 136 Wis. 473, 480, 117 N. W. 1020, that "where the facts and circumstances relating to the subject are admitted or clearly established, waiver becomes a question of law." But if different inferences may be drawn from the evidence, a question of fact is presented "to be determined by court or jury, according as parties see fit to submit the controversy for decision." *Fraser v. Ætna L. Ins. Co.* 114 Wis. 510, 524, 90 N. W. 476.

The matters relied on to show waiver are the following: (1) Statements made by Oscar B. Zwietusch at the time of the receiver's sale and thereafter, to the effect that he would not consent to any assignment or transfer of the lease that would jeopardize his claim against the stockholders of the International Construction Company. (2) Insistence by Zwietusch that receipts evidencing payments of rent after the receiver's sale run to the International Construction Company. (3) Refusal by the lessors to file a claim for rent against the Wonderland Amusement Company after it became bankrupt. (4) An answer filed by the lessors in the receivership proceedings arising out of the failure of the Wonderland Amusement Company, in which it was stated that *George F. Luehring* did not comply with the terms of the order of sale by accepting the lease in the manner therein provided, and that he did

not thereafter by a written instrument assume or agree·to pay
the rent and to perform the other conditions of the lease.
It was further recited in said answer that the lessors did not
consent to the assignment, transfer, or sale by the receiver to
*Luehring.* (5) In an action brought by the lessors against
the incorporators of the International Construction Company,
it was alleged that *Luehring,* with the knowledge and consent
of the .defendants in that action, entered into possession of
the premises and continued in possession, and paid the rent
reserved in the lease to August 14, 1908, and plaintiff on in-
formation and belief stated that the lessors named in the
lease did not consent *in writing* to the assignment of said
lease to said *George F. Luehring.* (6) The making of a lease
of part of the premises in 1909 to Mrs. Hopkins and others.
(7) The giving of an option to the city of Milwaukee in 1911
to buy the property, coupled with a form of contract which the
lessors agreed to execute if the option was accepted, which
proposed contract recited that the property would be con-
veyed free and clear of all liens and incumbrances. (8) The
delay in commencing this action.

This looks like a rather formidable list, and at first blush
it might be thought that an inference of waiver might be
drawn from the facts and that the jury was the proper party
to draw such inference if it saw fit, although the parties to the
action apparently did not desire to have the question sub-
mitted. We might discuss the evidence in detail pertaining
to these various questions and show that none of them had
much force, and most of them none whatever. There is one
vital proposition that extends to all of them in so far as they
tend to show waiver: We are unable to find any evidence in
the record tending to show that the lessors or their prede-
cessors in title, prior to the time this action was commenced,
knew of the agreement under which *Luehring's* codefendants,
except. Kann, were in fact parties to the purchase at the re-
ceiver's sale and would be liable for the rent reserved in· the

lease.   It is very evident that Oscar B. Zwietusch did not
know of the existence of the agreement between the defend-
ants when he told Durant that he would do nothing that
would waive a claim against the responsible stockholders in
the Construction Company like *Becker* and *Mayer*.   These
were the men who would be liable if the terms of the order
of sale in reference to making a contract had been carried
out.   Surely he would be willing to accept this express con-
tract to do what he proposed to force them to do by a proceed-
ing the result of which was at least somewhat doubtful.
There is no evidence that he was informed of the agreement
up to the time of his death, or that any of the other lessors
were so informed.   We entertain no doubt that had these
parties presented a contract to the lessors by which they
agreed to assume the covenants of the lease, it would have
been entirely satisfactory.   What the lessors did not know,
as far as the record discloses, is that they had a claim against
these defendants by virtue of the *Luehring* purchase, be-
cause they did not know that any one but *Luehring* was re-
sponsible for the fulfilment of the obligation assumed by him
when he purchased the lease.   It is true that Zwietusch was
a stockholder in the Construction Company and attended
some of its meetings.   But he was not a party to the reor-
ganization scheme, and it does not appear that the final
arrangement entered into between those who were was brought
to his notice, or even that he knew of the existence of the con-
tract of November 19, 1907.   The defendants relied on the
defense of waiver, and the burden was on them to show it.
Unless a known right was relinquished there was no waiver.
The lessors might object to *Luehring* taking an assignment of
the lease and assuming liability for its covenants, and at the
same time be entirely willing that he and his codefendants
should do so.

   The right acquired by the lessors under the sale and trans-
fer of the receiver was a valuable one.   By virtue of it solvent

lessees succeeded an insolvent one. The lessors wanted the stipulated rent, not the possession of the premises. Men ordinarily do not throw away valuable and secure rights in order that they may pursue uncertain ones, and it is only in very rare cases that valuable and certain rights are wantonly thrown away when there is no necessity for doing so in order to preserve other existing rights.

7. It is urged that the court erred in admitting evidence (a) tending to show the negotiations between the defendants which led up to the purchase made by. *Luehring* at the receiver's sale; (b) tending to show the formation of the Wonderland Amusement Company and the assignment and transfer to it by *Luehring* of the property bought at the receiver's sale and its subsequent use of the property; and (c) in receiving in evidence the proceedings had in the case of Scholl v. International Construction Company, and particularly the order of sale made therein.

The evidence was competent. The most important facts that it tended to show, namely, that *Luehring* acted as the agent and representative of the other defendants, except Kann, in making the purchase and subsequent transfer, and that they were liable for any obligation which he assumed in making the purchase, are practically admitted by the pleadings. It was proper to get the whole transaction before the court and jury. The evidence does not show that there was anything meretricious about the arrangement of the defendants to secure the property and finance and carry on the undertaking. But the carrying out of a reorganization scheme may bring on unanticipated troubles, as will be seen by a reference to *Northern Pac. R. Co. v. Boyd,* 228 U. S. 482, 33 Sup. Ct. 554.

8. There are a number of errors assigned on the exclusion of evidence which have been considered and which need not be treated in detail. The most important arise out of the refusal of the court to permit the witness *Luehring* to testify

(a) to conversations with Oscar B. Zwietusch, deceased; (b) to declarations of the same person; (c) to a conversation with Mr. Hoyt, the attorney for Zwietusch, had in the presence of the latter, and (d) a conversation between Durant and Judge Tarrant relative to the order of confirmation.

(a) The first class of questions were, we think, properly excluded under sec. 4069, Stats. *Luehring,* it is true, testified that he was not a stockholder in the International Construction Company and that he was simply representing the Hilty Lumber Company, a corporation of which he was secretary, which company held stock in the International Construction Company. It is none the less true that he was apparently the most active of those who formulated and carried out the reorganization plan. It is also true that as a stockholder in the Hilty Lumber Company he would have to share in its losses, and that when the agreement of November 19, 1907, was entered into he signed the same, representing that he was the owner of ten shares of the capital stock of the International Construction Company, and further, that he was elected secretary and treasurer of the Wonderland Amusement Company. The witness is here a party to the action, which was not the case in *Hanf v. Northwestern M. A. Asso.* 76 Wis. 450, 452, 45 N. W. 315, or *Laack v. Runge,* 104 Wis. 59, 60, 80 N. W. 61, and we do not think it can be said that he is a mere nominal party, because he has a financial interest in the controversy. It would also seem that if he were only a mere agent of his codefendants, having purchased the lease in his own name and transferred it pursuant to their direction, he is a person through or under whom the persons offering his testimony derive their title or sustain their liability within the meaning of sec. 4069.

(b) There was no prejudicial error in refusing to permit *Luehring* to testify to the declaration made by Zwietusch at the time of the sale, if there was any error in doing so. This declaration was proven by two other witnesses called by

defendants, one of them being their attorney, and such evidence is undisputed and for the purposes of this appeal assumed to be true.

(c) *Luehring* testified that he was advised by his attorney during the fall of 1907 that it was necessary to determine the relations that would exist between the lessors and himself and the other defendants or any other person who might take over the park, and that he had a conference in reference to this matter with Mr. Hoyt and Mr. Zwietusch. He was then asked to relate the conversation had with Mr. Hoyt. Objection was made and sustained to this as incompetent and irrelevant and as coming within the statute. This ruling is said to be proper under the decision of this court in *Holway v. Sanborn,* 145 Wis. 151, 130 N. W. 95. That case does not so decide. It involved the question of whether, where the deceased and another carried on a conversation in the presence of a third party who did not participate therein, such third party might testify to what the deceased said. Here the question called for what Mr. Hoyt said, and he was very much alive at the time of the trial. Mr. Hoyt's statement made in the presence of his client would not cut much figure if it was not concurred in by the client, and this fact could not be shown. We are not advised what it was intended to show by the witness, and it is not apparent how it could affect the liability assumed long thereafter by reason of the purchase at the receiver's sale. Under sec. 3072m, Stats., we may not reverse for error unless it affirmatively appears that the error not only harmed the appellants, but harmed them so materially that the result might probably have been different had the error not occurred. *Koepp v. Nat. E. & S. Co.* 151 Wis. 302, 139 N. W. 179; *Adams v. Bucyrus Co.* 155 Wis. 70, 143 N. W. 1027. There is no such showing of prejudicial error here.

(d) Any conversation which Mr. Durant had with the late Judge TARRANT in reference to the order of confirmation

could not be material on the issues before the court. The order speaks for itself. If Mr. Durant had been called on to explain his conduct in the matter, the evidence might be proper enough. However, no one was attacking his conduct and he was not on trial, and the evidence excluded was clearly incompetent.

9. On November 15, 1909, the plaintiffs leased the premises in question, or part of them, to one Mrs. Hopkins and her associates. It is argued that an actual surrender of possession by the lessee and the leasing of the premises by the lessors to a third party amount to a surrender of the lease and a re-entry by the lessors, and that if this result did not follow as a matter of law, the evidence at least presented sufficient facts to warrant a jury in finding a voluntary surrender and acceptance thereof and a re-entry by the lessors. This question affects to some extent the amount of damages recoverable in this action. We think the trial court was right in the conclusion which it reached. Manifestly it was for the advantage of the defendants that this lease be made, as their grantee had become insolvent and had abandoned the premises, and any amount received for rent would mitigate the damages that might otherwise be recoverable. Before this lease was made, the matter of making it was submitted to the defendants, and a written agreement was entered into between them and the lessors, in which the defendants agreed that the lessors might lease the land in question at an annual rental of at least $2,000, and in which they further agreed that the making of such lease should not "prejudice or affect in any way the rights or claims of the lessors against any of the parties liable upon or under said original lease," if any liability existed thereunder. This agreement recited that the signers were stockholders in the International Construction Company. But they were the defendants in this action and expressly agreed that the making of the lease should not prejudice the rights of the lessors against *any* of the parties who

were liable under the original lease. This contract is very plain in its terms and we think the defendants should be bound by it.

It is also claimed that it should be held that there was a re-entry by virtue of the option which was given to the city of Milwaukee to purchase the premises in 1911. The nature of this option is set forth in the statement of facts. The option was never accepted and never became a binding contract to sell, and we do not think the evidence would warrant a jury in finding that the giving of it constituted a re-entry so as to relieve the defendants from the further payment of the rent.

*By the Court.*—Judgment affirmed.

A motion by the appellants for a rehearing was denied, with $25 costs, on February 24, 1914.